**VENROD CORPORATION, Plaintiff,**

v.

**SECRETARY OF the TREASURY OF the COMMONWEALTH OF PUERTO RICO, et al., Defendants.**

**Civ. No. 88–2099 (JP).**

United States District Court,
D. Puerto Rico.

Jan. 4, 1989.

Leonardo Andrade Lugo, Edgardo Colón Arrarás, Goldman & Antonetti, Santurce, P.R., for plaintiff.

María L. Jiménez Colón, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

On December 28, 1988, at 4:47 p.m., plaintiff, the Venrod Corporation, an importer and distributor of alcoholic beverages, filed this action and requested a Temporary Restraining Order against the defendants, the Secretary of the Treasury of Puerto Rico and the Director of the Puerto Rico Bureau of Alcoholic Beverages. The Court set a hearing for the following morning and instructed plaintiff's counsel to no-

tify defendants, at least orally, of the hearing. By approximately 6:30 p.m., defendants and their counsel had been notified by telephone. Transcript of Hearing on Motion for Temporary Restraining Order ("Transcript") at 6.

At the hearing the following morning, defendants appeared, represented by counsel,[1] and argued against issuance of the TRO. They were not prepared to present evidence, so all evidence alluded to and relied on herein was, in effect, *ex parte*.

## I. BACKGROUND

In its verified complaint and at the hearing, plaintiff, through its president, Waldemar Rodríguez, alleged that on May 16, 1988, plaintiff applied to defendants for the Certification of Label Approval necessary for the importation and sale of Lambrusco "Marchese D'Amore" in Puerto Rico as a "substandard wine," and that on August 1, 1988, defendant Miguel Bilbraut, the Director of the Bureau of Alcoholic Beverages, granted the permit. Verified Complaint, Exh.A. Pursuant to 13 L.P.R.A. § 6006(2)(a), the permit provided for an excise tax of $1.20 per gallon. The wine was to be fermented initially in Italy, then shipped to Tenerife, in the Canary Islands (Spain), where it was to be refermented and sugar cane alcohol was to be added. Transcript at 25.

Mr. Rodríguez further testified that upon obtaining its permit, Venrod purchased 30,-000 cases of the Marchese D'Amore, and secured letters of credit and a shipping schedule geared to the Christmas season, which is the "peak" season for the consumption of such products in Puerto Rico. Transcript at 15–16. On October 24, 1988, after Venrod had irrevocably committed itself to purchase the 30,000 cases of the Marchese D'Amore, Bilbraut revoked Venrod's permit of August 1, 1988, by way of a letter stating that upon reviewing the specifications of the Marchese D'Amore label he had noticed that it did not indicate that

it was a "substandard wine," and that such information was important due to the fact that the chemical characteristics of the product had been altered by the addition of sugar cane alcohol. Verified Complaint, Exh.M. Venrod was not afforded a hearing in connection with the revocation of the permit. According to Rodríguez, he then convinced Bilbraut that there was no law or regulation in Puerto Rico which required the label to state that it was a substandard wine, and that the local companies engaged in the manufacture of the same type of wine did not include this information on their labels. On November 23, 1988, Bilbraut again wrote to Venrod, this time stating that upon consideration of the documentation submitted by Venrod with the initial application, the Marchese D'Amore fell under the category of "wine" and not "substandard wine." *Id.* Exh.O. *See* 13 L.P.R.A. §§ 6005(52) and (53). This results in a tax of $8.25 per gallon, *see* 13 L.P.R.A. § 6006(2)(b), which Rodríguez alleged would cause the wine to be uncompetitive with similar products made in Puerto Rico which pay the substandard wine tax of $1.20. This action was taken as well without notice or a hearing. Mr. Rodríguez further testified that had he been told this prior to the issuance of the permit on August 1, 1988, Venrod would not have purchased the Marchese D'Amore. Transcript at 19. The situation was causing Venrod irreparable damages insofar as that once Venrod obtained the permit, it began preselling the product to its customers and obtaining their orders for its purchase, and the revocation was adversely affecting Venrod's relationship with its clients, its credibility, and its goodwill. The situation was also causing grave cash flow problems for Venrod and would ultimately strain its relationships with its lending institutions and its suppliers. Further, Rodríguez stated that the Marchese D'Amore would spoil if kept warehoused for over six (6) months. Transcript at 21–22.

---

**1.** Given the short time period available for the defendants' preparation for the hearing, and despite the exemplary performance under the circumstances of defendants' counsel, the Court

deems it proper to accord defendants the full protection provided by Fed.R.Civ.P. Rule 65(b) for the issuance of temporary restraining orders *ex parte* without notice.

Rodríguez testified that he sought reconsideration of the November 23 decision several times, by himself and through his attorneys, and that his requests were never answered. *Id.* at 23.

## II. JURISDICTION

■ The most troublesome aspect of this case is the jurisdictional issue. Plaintiff brought the action pursuant to 42 U.S.C. § 1983, and alleged jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. In that the case alleges violations of plaintiff's constitutional rights under the due process and equal protection clauses of the fourteenth amendment, and the Commerce Clause of Article I, as well as rights pursuant to 48 U.S.C. § 741a (which prohibits discriminatory taxation by Puerto Rico against imported products in favor of locally produced ones) the matter of jurisdiction would appear straightforward.[2] However, Congress has thrown a wrench into the works in order to "prevent the Island from having its revenues held up by injunction," *Smallwood v. Gallardo,* 275 U.S. 56, 61, 48 S.Ct. 23, 24, 72 L.Ed. 152 (1927), by enacting the Butler Act, 48 U.S.C. § 872, which states:

> No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico.

This would seem to put an end to the matter as well, bringing this case to a screeching halt, were it not for the oiling given by the First Circuit in *Carrier Corp. v. Pérez,* 677 F.2d 162, 164 (1st Cir.1982). *Carrier* brought the machinery of this Court into line with that of other federal courts, which are restrained in the interest of federalism not by the Butler Act, but by the Tax Injunction Act, 28 U.S.C. § 1341. That statute provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law *where a plain, speedy and efficient remedy may be had in the courts of such State* (emphasis added).

*Carrier* held that the "plain, speedy and efficient remedy" proviso of Section 1341 also applied to the Butler Act.

The question before the Court, then, assuming this to be a case of enjoining the assessment or collection of a tax,[3] is whether Puerto Rico provides in its courts a plain, speedy, and efficient remedy. The only state remedy alleged by defendants to be available, and the only one of which this Court is aware, is for plaintiff to pay the $8.25 tax demanded by defendants and sue for a refund. *See* 13 L.P.R.A. § 261.

Normally, if a state requires a taxpayer to pay a contested tax and then sue for a refund, a plain, speedy and efficient remedy will be held to exist. In *Rosewell v. La Salle National Bank,* 450 U.S. 503, 101 S.Ct. 1221, 67 L.Ed.2d 464 (1981), the Supreme Court held that a state court procedure providing for a refund without interest and which takes two years satisfies the Act and bars federal jurisdiction. *Id.* at 528, 101 S.Ct. at 1237. *See also Carrier,* 677 F.2d at 174 (upholding Puerto Rico's refund procedure.)

The twist here is that Puerto Rico requires for its state remedy that not only must the plaintiff have *paid* the tax, but that it "must have in fact *suffered the economic burden* of the tax." *Pedro A. Pizá, Inc. v. Tax Court,* 72 P.R.R. 302, 304 (1951) (emphasis added). Noting that "the Legislature had the power to withdraw its consent for the sovereign to be sued for refund of taxes," *id.* at 306 n. 8, the Puerto

---

**2.** Plaintiff alleges as well a violation of Puerto Rico law, 13 L.P.R.A. § 6007, also prohibiting discriminatory taxation. The only basis for jurisdiction over this claim is pendent jurisdiction, which this Court declines to exercise for reasons which will become apparent in this opinion.

**3.** For purposes of this discussion, it is assumed that the effect of the requested ruling would be to enjoin the Puerto Rico state tax. However,

that is not a necessary assumption. Plaintiff was issued a permit at $1.20 per gallon, relied on it to the extent of a purchase of 30,000 cases of wine, and the permit was then revoked by defendants without notice or a hearing. It could be construed that the effect of the requested injunction would be to *enforce* the permit as issued, not to enjoin the tax.

Rico Supreme Court held that the state courts are without jurisdiction to entertain suits by taxpayers who do not bear the burden of the challenged tax, *id.* at 307, stating:

> The legislature foresaw the possibility that some taxpayers might receive a windfall because a particular excise tax had been declared invalid years after the taxpayers on whom the taxes were imposed by law had paid them and had passed the burden thereof to their vendees. It therefore closed the doors of our courts to such cases. Only taxpayers who had absorbed the taxes and had not passed them on to their vendees could sue therefor.

*Id.* at 305–06. *See* 13 L.P.R.A. § 261 ("No credit or reimbursement of any tax ... shall be granted unless the taxpayer shows ... that he has sustained the burden of the payment of the tax.").

This puts plaintiff in a catch–22 situation anent the state remedy: it can either pass the burden of the tax on to the ultimate purchaser, which will make this wine uncompetitive, and thereby forego any remedy for an allegedly illegal tax, or it can absorb the tax, sell the wine at a loss, and attempt to obtain a refund. Although *Carrier* upheld Puerto Rico's refund procedure as a plain, speedy and efficient remedy, this problem was not encountered in that case. Even if one assumes that the state refund proceeding will fairly allow litigation of all federal constitutional claims, (*but cf. RCA v. Government of the Capital*, 91 P.R.R. 404, 418 (1964) (suggesting that commerce clause does not apply to Puerto Rico)), a remedy which requires for its availability the selling of the wine at a loss is not plain, speedy and efficient.

## III. PROPRIETY OF INJUNCTIVE RELIEF

Once past the jurisdictional hurdle, we reach the merits of the petition for a tem-

porary restraining order. As noted in *Aoude v. Mobil Oil Corp.*, 862 F.2d 890, 892 (1st Cir.1988), "the criteria for preliminary injunctive relief are not much in doubt." The four criteria are:

1. the likelihood of success on the merits;
2. the potential for irreparable injury;
3. a balancing of the hardships;
4. the effect on the public interest.

*Id.* at 892–93.

### A. *Likelihood of Success*

Plaintiff has presented evidence, both orally and by affidavit and exhibits, which appear to entitle it to prevail on the merits. Although defendants did not have a full and fair opportunity to contradict it, *see supra* note 1, plaintiff's evidence appears fully credible to the Court.

■ Plaintiff has established (for purposes of this TRO only) that he was issued a permit on August 1, 1988, setting the tax at $1.20 per gallon, and that this permit was revoked without notice or a hearing, requiring a tax of $8.25. Once issued and relied upon, a license or permit constitutes property within the context of the due process clause of the fourteenth amendment, which clause requires, at a minimum, that notice and a hearing be given before the permit can be revoked.

■ Further, it appears from the evidence presented that plaintiff is attempting to import and sell a product virtually identical to some locally produced wines,[4] and that defendants are attempting to tax it at a rate much higher than the local ones. Pursuant to 48 U.S.C. § 741a, the Commonwealth authorities may not discriminate in this manner.[5]

It thus appears on the basis of the evidence of record that plaintiff is entitled to prevail on the merits of both the due pro-

---

4. Actually, the local wines are not fully produced in Puerto Rico. Two of the producers ferment the wines here from imported grapes, and one adds cane alcohol here to wine fermented in California. *See* Transcript at 24.

5. The above holding regarding Section 741a involves the same analysis as would the equal protection and commerce clause allegations. They need not be discussed separately.

cess and discriminatory taxation allegations.[6]

### B. *Irreparable Injury*

As to the factor of irreparable injury, plaintiff has presented evidence that its business will suffer, to the point of bankruptcy, if no injunction is granted. The wine, which enjoys its peak popularity at Christmas time, spoils in six months. Plaintiff is losing business goodwill both with customers and creditors. Although delays of a purely financial nature are not normally considered irreparable, loss of business goodwill to the extent alleged here cannot be adequately compensated by damages at a later date. The second test is thus met.

### C. *Balancing of the Equities and the Public Interest*

Both the third and fourth factors are close calls. Plaintiff will suffer severe harm as described in B, above, but the federally mandated policy of non-interference in state tax affairs is a weighty equity in favor of defendants. There is a strong public interest in the state's ability to collect its taxes without undue interference, as well as a strong public interest in the enforcement of constitutional standards and safeguards. Balancing these interests and equities is difficult; it is also unnecessary. Given the overwhelming likelihood of success on the merits, the close call on these factors need not be resolved. The plaintiff has met its overall burden of demonstrating its entitlement to interim relief.

### IV. NATURE OF THE RELIEF

In order to preserve the rights of the defendants, who did not have sufficient time to prepare before their appearance, *see supra* note 1, the Court deems it necessary to limit the scope of the injunction. For purposes of the Temporary Restraining Order, it is not necessary to absolutely bar defendants from collecting the higher tax in local court; plaintiff need only have the ability to sell the wine now, during the Christmas season, at the originally set lower tax. Thus, the Court ORDERS as follows:

1. Plaintiff shall post a $10,000.00 bond with this Court pursuant to Fed.R.Civ.P. Rule 65(c) as a condition of this injunction.

2. As a condition of this injunction, plaintiff shall pay to defendants a tax of $1.20 per gallon of Lambrusco "Marchese D'Amore." If the $1.20 tax is paid, the defendants are enjoined from interfering with plaintiff's taking possession of and sale of the wine.

3. Defendants may proceed in local court to attempt to collect any tax they allege is due. They are enjoined from attaching or seizing the wine to collect this tax.

4. This TRO expires in ten (10) days, which is on January 17, 1989, at 11:30 a.m., as calculated by Fed.R.Civ.P. Rule 6(a), or upon earlier dissolution by order of this Court. A hearing on the preliminary injunction is consolidated with the trial on the merits of the permanent injunction pursuant to Fed.R.Civ.P. Rule 65(a)(2), and shall be held on January 9, 1989, at 9:30 a.m.

The temporary restraining order in this case was entered orally from the bench on December 29, 1988, at approximately 11:30 a.m., and took effect from that time.

IT IS SO ORDERED.

---

**6.** It is worth noting that one of the Supreme Court's main reasons for strictly applying the Tax Injunction Act is not at play here: construction of state law plays no part in the basis for this opinion. *See Rosewell,* 450 U.S. at 527, 101 S.Ct. at 1246.