# United States Court of Appeals

## For the First Circuit

No. 08-2388

PLEASURES OF SAN PATRICIO, INC.,

Plaintiff, Appellant,

IVÁN R. ROCAFORT,

Plaintiff,

v.

JUAN C. MÉNDEZ-TORRES;
DEPARTAMENTO DE HACIENDA DE PUERTO RICO,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Carmen Consuelo Cerezo, U.S. District Judge]

Before

Torruella, Baldock,* and Howard, Circuit Judges.

Frank E. Guerra-Pujol, for appellant.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
Department of Justice, Commonwealth of Puerto Rico, with whom Irene
S. Soroeta-Kodesh, Solicitor General, Leticia Casalduc-Rabell,
Deputy Solicitor General, and Zaira Z. Girón-Anadón, Deputy
Solicitor General, were on brief for appellees.

February 22, 2010

* Of the Tenth Circuit, sitting by designation.

**BALDOCK, Circuit Judge**.  Plaintiff Iván Rocafort is the president and primary shareholder of Plaintiff-Appellant Pleasures of San Patricio, Inc. (PSP), a tobacco and wine shop in Puerto Rico.[1]  PSP regularly imports and sells little cigars made in the mainland United States and is the exclusive distributor of Cheyenne Little Cigars in Puerto Rico.  The United States Department of the Treasury has classified little cigars as a different tobacco product from cigarettes.  Section 2009 of the 1994 Puerto Rico Internal Revenue Code imposes an excise tax on cigarettes but not on little cigars.  Prior to 2007, PSP had never been required to pay Puerto Rico's cigarette excise tax on its imported little cigars.  In 2007, PSP ordered $40,000 worth of Cheyenne Little Cigars from a manufacturer in North Carolina.  Defendant Secretary of the Puerto Rico Department of the Treasury, Juan Méndez-Torres, for the first time refused to release PSP's shipment of Cheyenne Little Cigars until PSP paid the cigarette excise tax.  PSP alleges Defendant acted pursuant to Circular Letter of Internal Revenue No. 05-08 dated August 17, 2005 (Circular Letter) which PSP claims imposes Puerto Rico's cigarette tax only on little cigars produced in the United States.

In October 2007, PSP filed suit in Puerto Rico federal district court requesting "the immediate release of [PSP's]

---

[1] Though both Plaintiff Rocafort and Plaintiff-Appellant PSP sued in federal court and later in the Commonwealth courts, for simplicity's sake we refer only to PSP.

shipment of Cheyenne Little Cigars . . .," "a permanent injunction against the selective and discriminatory imposition of the cigarette excise [tax] upon Cheyenne Little Cigars" and a declaration "that the excise tax of the 1994 Internal Revenue Code of Puerto Rico Section 2009 [is] not applicable to Cheyenne Little Cigars." PSP asserted Defendant's application of the cigarette excise tax solely to mainland-made little cigars constitutes unconstitutional interference with and discrimination against interstate commerce, in violation of the Commerce Clause, Article I, Section 8 of the United States Constitution.

The district court granted Defendant's motion to dismiss for lack of jurisdiction in August 2008. The district court concluded the Butler Act, 48 U.S.C. § 872, prevented it from hearing the suit because the Act prohibits the filing of suits in federal courts "'for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico.'" Pleasures of San Patricio, Inc. v. Méndez-Torres, 2008 WL 4191251, at *1 (D.P.R. Aug. 29, 2008) (quoting 48 U.S.C. § 872). The court was "firmly convinced that this is a prototypical Butler Act case as [PSP] is explicitly challenging the validity of a tax and [Defendant]'s authority to assess it." Id. Consequently, the district court declared it did not have jurisdiction to entertain the suit. Id. at *2. PSP's timely appeal to our Court followed.

At oral argument, counsel for both parties revealed that while this appeal was pending, PSP filed an action in a Commonwealth of Puerto Rico trial court and received a partial summary judgment, which was at that time on appeal to the Commonwealth appellate court. We, therefore, ordered both parties to file English translations of the proceedings and associated complaints, pleadings, motions and briefs in PSP's related case before the Commonwealth trial and appellate courts. Defendant responded to our order by filing 436 pages in no apparent order without a uniform page numbering system (some page numbers are handwritten, others are typed in various fonts and sizes, and some placed over the page's text). Defendant evidently thought it appropriate to divide the documents into six parts but failed to label any of these six parts. Defendant provides an "Addendum Index" which does not appear to correspond to what it actually filed. Looking at the first page and last page of each part, Part II allegedly contains pages 36 through 235; Part III allegedly contains pages 236 through 260; Part IV allegedly contains pages 54 through 123; Part V allegedly contains pages 124 through 226; and Part VI allegedly contains pages 180 through 226. As for pages 260 through 436, we are left to assume they are somewhere in those six parts; although, we have only been able to locate pages numbered through 338 scattered throughout the six parts because many of the pages lack page numbers altogether.

Under 28 U.S.C. § 1291, we review the district court's final order of dismissal for lack of jurisdiction de novo. Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). In light of the proceedings in the Commonwealth courts, we suspect this case is moot. The parties' inadequate compliance with our order, however, prevents us from definitively reaching a conclusion as to mootness. Regardless, we can definitively conclude based upon the submissions that we lack subject matter jurisdiction pursuant to the Butler Act because Commonwealth of Puerto Rico courts have provided a plain, speedy, and efficient remedy. We, consequently, affirm the district court's dismissal for lack of jurisdiction.

I.

From what we can decipher, PSP apparently filed a lawsuit in the Commonwealth of Puerto Rico in February 2009, after the federal district court dismissed the instant case, against the Puerto Rico Department of the Treasury and Department of Justice challenging the Circular Letter, requesting an injunction, and demanding damages for the unlawful detention of its shipment. See Rocafort v. Dep't of the Treasury, No. E PE2009-0057 (Court of First Instance, Caguas Superior Court, filed February 20, 2009). PSP alleged Defendant Méndez-Torres implemented the Circular Letter in contravention of Puerto Rico's Small Business Administrative and Regulatory Flexibility Act (SBARFA), 3 L.P.R.A. §§ 2251–2262. The Court of First Instance granted partial summary judgment and

-5-

entered a judgment in PSP's favor. The court considered whether Defendant Méndez-Torres acted in conformity with the SBARFA in issuing the Circular Letter and, if properly issued, whether the Circular Letter promulgates an invalid administrative interpretation of Section 2009 of the Internal Revenue Code. PSP does not appear to have raised Commerce Clause arguments before the Court of First Instance. Ultimately, the court concluded Defendant Méndez-Torres acted in contravention of the SBARFA in issuing the Circular Letter and relied upon an invalid regulatory interpretation in seizing the shipment of little cigars. The court, therefore, granted PSP's motion for partial summary judgment and ordered the Department of the Treasury to release the shipment immediately. Defendants then filed a petition for certiorari before the Commonwealth of Puerto Rico Appellate Court. See Rocafort v. Dep't of the Treasury, No. KLCE2009-01542, Petition for Certiorari (Appellate Court, Judicial Region of Caguas, filed October 26, 2009). That is the last documentation we have of this case in the Commonwealth courts. Neither party has supplemented the record pursuant to Fed. R. App. P. 28(j) to inform us whether the Appellate Court has granted the petition for certiorari, let alone whether it has affirmed the Court of First Instance's partial summary judgment in favor of PSP. The parties have also not informed us whether the Department of the Treasury has complied with the Court of First Instance's September 2009 order by

-6-

releasing the shipment. As a result, we cannot conclusively determine that the Commonwealth proceedings render the case before us moot. We, therefore, proceed to determine whether the Butler Act deprives us of subject matter jurisdiction.

## II.

The Butler Act states, in relevant part: "No suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico." 48 U.S.C. § 872. The Act is "a close analogue to the Tax Injunction Act ('TIA') applicable to Puerto Rico." Coors Brewing Co. v. Méndez-Torres, 562 F.3d 3, 13 (1st Cir. 2009). "The two statutes employ different language (*i.e.* the [TIA] includes an express exception that the Butler Act lacks), but 'have been construed *in pari materia*.'" United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 330 n.11 (1st Cir. 2003)(quoting Trailer Marine Transp. Corp. v. Rivera Vazquez, 977 F.2d 1, 5 (1st Cir. 1992)). For this reason, we apply the Butler Act in the same manner as the TIA. Carrier Corp. v. Perez, 677 F.2d 162, 164 (1st Cir. 1982). The TIA limits the jurisdiction of a federal court to entertain a suit seeking to enjoin the levying or collection of a state tax where "a plain, speedy and efficient remedy" exists in state court. Id. at 164; see also United Parcel Serv., 318 F.3d at 330 n.11. Two conditions must, therefore, be satisfied before the Butler Act will

deprive a federal court of jurisdiction: first, the suit must attempt to restrain the assessment or collection of a Puerto Rico tax; and second, local courts must provide the plaintiff a plain, speedy, and efficient remedy.  Carrier, 677 F.2d at 164.

### A.

As to the first condition, similar to the TIA, "[n]ot every statutory or regulatory obligation that may aid the Secretary [of the Treasury]'s ability to collect a tax is immune from attack in federal court by virtue of the Butler Act's jurisdictional bar." United Parcel Serv., 318 F.3d at 331.  The Act's jurisdictional bar only extends to:

> "[C]ases where taxpayers were repeatedly using the federal courts to raise questions of state or federal law going to the validity of the particular taxes imposed upon them—not to a case where a taxpayer contended that an unusual sanction for non-payment of a tax admittedly due violated his constitutional rights . . . ."

Id. (quoting Wells v. Malloy, 510 F.2d 74, 77 (2d Cir. 1975)).

In Coors Brewing Co. v. Méndez-Torres, we further clarified the scope of the Butler Act in the wake of the Supreme Court's decision in Hibbs v. Winn, 542 U.S. 88 (2004).  Hibbs v. Winn dealt with the scope of the TIA, but we concluded in Coors:

> [S]ince the Butler Act is read in parallel to the TIA, and since it similarly only restricts the district courts from entertaining suits "for the purpose of restraining the assessment or collection" of taxes of Puerto Rico, we read it, according to Hibbs, to only apply where plaintiffs seek to challenge taxes in a

-8-

way that would reduce the flow of state tax revenue.

*Coors*, 562 F.3d at 14. For this reason, we concluded that despite the Butler Act the district court had jurisdiction to entertain Coors's suit challenging an exemption in Puerto Rico's taxing scheme which specified a lower tax rate for small brewers (generally local brewers). *Id.* at 16. Coors sought a declaration that the exemption was unconstitutional under the Commerce Clause as well as an injunction prohibiting the Puerto Rico Secretary of the Treasury from allowing any taxpayer to pay only the reduced tax rate provided by the small brewers exemption and requiring the Secretary to impose the higher tax rate on all brewers. *Id.* at 5. Because Coors did not seek to lower the tax rate on itself, "rather than eliminat[ing] a potential source of revenue, the relief Coors request[ed] would simply eliminate a tax law affording preferential tax treatment to certain taxpayers." *Id.* at 16. Accordingly, we concluded that under *Hibbs*, Coors's action was not barred by the Butler Act. *Id.*

At first blush, PSP's suit appears similar to the one we determined fell beyond the scope of the Butler Act in *Coors*. PSP raised a Commerce Clause objection to Defendant placing a higher tax on mainland-made little cigars than locally-made little cigars. Similarly, Coors raised a Commerce Clause challenge to the Secretary's imposing a higher tax on large brewers than on small brewers. But, critically, the two suits differ in the relief

-9-

requested.  Coors requested an injunction requiring all brewers, large and small, to pay the higher large-brewer tax, thereby increasing the revenue flowing to Puerto Rico.  In contrast, PSP requested in its amended complaint that the federal district court "order the immediate release of [PSP's] shipment of Cheyenne Little Cigars . . ., . . . issue a permanent injunction against the selective and discriminatory imposition of the cigarette excise [tax] upon Cheyenne Little Cigars, [and]. . . declare that the excise tax of the 1994 Internal Revenue Code of Puerto Rico Section 2009 [is] not applicable to Cheyenne Little Cigars."  PSP did not request an injunction requiring Defendant to apply the cigarette excise tax to all little cigars, including those made in Puerto Rico.  Consequently, rather than increase the revenue generated by Puerto Rico's tax laws, PSP's requested relief "would reduce the flow of [Puerto Rico] tax revenue."  Coors, 562 F.3d at 14.  We must, therefore, conclude PSP's suit does fall within the ambit of suits barred by the Butler Act.

B.

Now that we have determined PSP's suit is within the scope of suits barred by the Butler Act, we must decide whether Puerto Rico local courts provide a plain, speedy, and efficient remedy.  Carrier, 677 F.2d at 164.  PSP argues in its briefs that it lacks such a remedy for two reasons: first, Puerto Rico tax procedure requires it to sell its little cigars at a loss; second,

-10-

the Supreme Court of Puerto Rico does not recognize the applicability of the Commerce Clause to Puerto Rico.[2]

The Supreme Court has clarified that the requirement of a plain, speedy, and efficient remedy in state court is only a procedural one and is, therefore, satisfied merely when "certain procedural criteria" are met. Rosewell v. LaSalle National Bank, 450 U.S. 503, 522 (1981); Carrier, 677 F.2d at 165. A state remedy meets these minimal procedural criteria so long as it "provides a taxpayer with a 'full hearing and judicial determination' at which she may raise all constitutional objections to the tax" and may therefrom seek review before the Supreme Court. Rosewell, 450 U.S. at 515 n.19.

1.

Puerto Rico law evidently requires individuals contesting an imposed tax to pay the tax and then apply to the Secretary of the Treasury for a refund. See 13 L.P.R.A. § 261 ("[N]o credit or reimbursement of any tax covered by §§ 261 and 262 of this title shall be granted unless the taxpayer shows . . . he has sustained

---

[2] PSP also suggested at oral argument that it lacked a plain, speedy, and efficient remedy in the Commonwealth Courts because such an action is time barred. First, we note we have no way of knowing if the Commonwealth courts have determined PSP's suit is time barred because the parties' addendum does not indicate any Commonwealth court has ruled on the issue yet. Second, because PSP raised this argument for the first time at oral argument, we refuse to consider it. See Nieves-Vega v. Ortiz-Quiñones, 443 F.3d 134, 138 (1st Cir. 2006); Surprenant v. Rivas, 424 F.3d 5, 16 (1st Cir. 2005).

-11-

the burden of the payment of the tax."); Carrier, 677 F.2d at 164.[3]
State refund actions that allow protesting taxpayers the
opportunity for state judicial review of their constitutional and
federal claims generally constitute a plain, speedy, and efficient
remedy. See California v. Grace Brethren Church, 457 U.S. 393,
416–17 (1982); Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S.
293, 300 (1943). But Puerto Rico requires taxpayers not only to
pay the tax before seeking redress, but also to in fact have
suffered the economic burden of the tax. 13 L.P.R.A. § 261; see
also Venrod Corp. v. Sec'y of the Treasury of the Commw. of Puerto
Rico, 704 F. Supp. 21, 23 (D.P.R. 1989)("[N]ot only must the
plaintiff have paid the tax, but . . . it 'must have in fact
suffered the economic burden of the tax.'" (quoting Pedro A. Pizá,
Inc. v. Tax Court, 72 P.R.R. 302, 304 (1951))). If the Secretary

---

[3] At oral argument, Plaintiff stated that PSP would have to
pay the imposed tax in order to request injunctive or declaratory
relief in the Commonwealth courts. Defendant's counsel took
contradictory positions on the matter. The addendum submitted by
the parties does not clarify this confusion, nor does it establish
whether PSP has already paid the tax or posted a bond as part of
the litigation in the Commonwealth courts. Although, seemingly if
PSP had paid the tax prior to filing suit in the Commonwealth
courts, Defendant would have released the shipment, and PSP would
not have requested the Commonwealth court to order Defendant to
release the shipment but would have instead requested a tax refund.
Since PSP did request the release of the shipment in the suit
before the Commonwealth trial court, PSP, in theory, has not yet
been made to pay the tax. But for reasons discussed herein the
answer to those questions does not affect our plain, speedy, and
efficient remedy analysis in this case. We, therefore, take PSP's
claim in its briefs and at oral argument that it must first pay the
tax to challenge it in the Commonwealth courts as true.

decides against the taxpayer, he may appeal the decision in the local Puerto Rico courts and, thereafter, seek review of any final Commonwealth court decision with the Supreme Court of the United States. Carrier, 677 F.2d at 164. This means only taxpayers who have absorbed the challenged taxes and not passed them on to their vendees may sue for a refund in Commonwealth courts. Venrod, 704 F. Supp. at 23. Quoting Venrod, PSP asserts:

> This puts [a] plaintiff in a catch-22 situation anent the state remedy: it can either pass the burden of the tax on to the ultimate purchaser, which will make [the taxed product] uncompetitive, and thereby forego any remedy for an allegedly illegal tax, or it can absorb the tax, sell the [taxed product] at a loss, and attempt to obtain a refund.

Id. at 24. In Venrod, the United States District Court for the District of Puerto Rico reasoned that while we had previously determined in Carrier that Puerto Rico's refund procedure constituted a plain, speedy, and efficient remedy, we did not encounter the catch-22 scenario described. Id. As a result, the Venrod district court proceeded to conclude "a remedy which requires for its availability the selling of the [taxed product] at a loss is not plain, speedy, and efficient." Id. In Carrier, we reviewed the exact same Puerto Rico tax refund procedure under 13 L.P.R.A. § 261 that the district court in Venrod discussed; we just did so seven years earlier.[4] Carrier, 677 F.2d at 164. At that

_____

[4] From what we can discover, 13 L.P.R.A. § 261 has only been altered once since 1954. In 2003, "Superior Court" was changed to

-13-

time, we concluded that Section 261 provided plaintiffs challenging Puerto Rico taxes a plain, speedy and efficient remedy. Id. The district court in Venrod correctly noted that the Carrier court did not expressly pass on the catch-22 scenario Section 261 creates by requiring plaintiffs to suffer the challenged tax. Venrod, 704 F. Supp. at 24. However, we must assume that when the Carrier court stated it had evaluated the Puerto Rico refund procedure in Section 261, the court reviewed it in its brief entirety (only two paragraphs long). We, therefore, have good reason to conclude we have already passed on Section 261's burden-bearing requirement.

Moreover, we independently fail to see how requiring a taxpayer to sell taxed goods at a loss before suing for a refund fails to provide him an adequate remedy. First, if the taxpayer prevails in his challenge of the tax, he obtains a refund, reversing the detriment the tax imposed upon him. Second, requiring a taxpayer to bear the burden of the tax does not diminish Puerto Rico's satisfaction of the Butler Act's minimal procedural requirements. Puerto Rico continues to satisfy those minimal procedural requirements by providing a taxpayer a "full hearing and judicial determination" of all of her constitutional objections to the tax, with review thereafter possible before the United States Supreme Court, regardless of its burden-bearing

---

"Court of First Instance." See P.R. Laws Ann. tit. 13 § 261 (LexisNexis 2006). Otherwise, the text of the statute has remained the same.

-14-

requirement. Third, Congress, and later the Supreme Court when asked to review state refund procedures, surely understood a taxpayer might have to bear the economic burden of a tax in order to contest it in state courts. When Congress first passed the Butler Act's cousin, the TIA, "Congress knew that state tax systems commonly provided for payment of taxes under protest with subsequent refund as their exclusive remedy." Rosewell, 450 U.S. at 523. Then and now, a significant portion of taxpayers are not businesses or entities that can pass on their tax liabilities to their consumers or employees, but instead are families and individuals who must bear the burden of their state tax liability rather than pass it on to someone else. Consequently, Congress and the Court must have realized many taxpayers would have to absorb the burden of a tax in order to contest it in state court. Thus, on the facts presented, we must conclude Puerto Rico's requirement that PSP absorb the burden of the tax prior to contesting it does not deprive PSP of a plain, speedy, and efficient remedy in Puerto Rico courts.[5]

---

[5] We note, however, some sister circuits have indicated that while generally a state refund procedure constitutes a plain, speedy, and efficient remedy, requiring a taxpayer to pay an exorbitant or effectively punitive tax in order to challenge it may present "such a heavy burden that to decline [federal] equitable relief would be to deny judicial review altogether." H.W. Denton v. City of Carrollton, Georgia, 235 F.2d 481, 485 (5th Cir. 1956); see also Capitol Indus.-EMI, Inc. v. Bennett, 681 F.2d 1107, 1114 n. 20 (9th Cir. 1982)(explaining that a state refund action may not constitute an adequate remedy in special circumstances, such as when a taxpayer is unable to pay a proposed assessment); Sterling

Furthermore, in this case, the Commonwealth courts (even assuming contrary to logic that PSP has paid the contested tax) have certainly provided PSP a plain, speedy, and efficient remedy. PSP has already received a favorable partial judgment from the Commonwealth trial court ordering Defendant to release its shipment. Even if the Commonwealth Appellate Court reverses the partial judgment, "[t]he Butler Act, at most, requires assurance that a plaintiff will have an opportunity to make an argument in [local] court, not that he will win." Id. at 165. As Defendant's addendum indicates, PSP has clearly had such an opportunity.

2.

We have also reviewed the Supreme Court of Puerto Rico's interpretation of the Commerce Clause's application to Puerto Rico, finding it far less definitive than PSP asserts. See Starlight Sugar, Inc. v. Soto, 253 F.3d 137, 143 (1st Cir. 2001) (concluding after reviewing circuit and Puerto Rico Supreme Court precedent that the Commerce Clause in the view of Puerto Rico courts may have "'contours which are different' from those when applied to the

Shoe Co. v. Norberg, 411 F. Supp. 128, 131 (D.R.I. 1976) (noting that "it is settled law that prepayment as a prerequisite to judicial review does not prevent application of" the TIA, but that "[t]here is a qualification, however, where there is a factual showing . . . that prepayment in order to secure judicial review 'poses such a heavy burden that to deny equitable relief is to deny judicial review entirely'" (quoting Denton, 235 F.2d at 485)). PSP has never contended it is unable to pay the "six dollars and fifteen cents" excise tax allegedly imposed by Puerto Rico upon its shipment of little cigars. As a result, we have no reason to believe that special circumstances of the nature other circuits have discussed exist here to justify jurisdiction.

States." (quoting <u>R.C.A.</u> v. <u>Gov't of the Capital</u>, 91 P.R.R. 404, 419 (P.R. 1964))); <u>Carrier</u>, 677 F.2d at 165 (explaining that the position taken by the Supreme Court of Puerto Rico on the applicability of the Commerce Clause to Puerto Rico was far more flexible in <u>R.C.A</u> than the plaintiff suggested). Regardless, as we have previously recognized, we need not address the precise contours of Puerto Rico's Commerce Clause jurisprudence in order to find PSP has an adequate remedy under Puerto Rico law. <u>Carrier</u>, 677 F.2d at 165. Rather, we have concluded it is sufficient that plaintiffs are "free to make a Commerce Clause-based argument in the courts of Puerto Rico, and to pursue those arguments to the Supreme Court of the United States if necessary." <u>Id.</u> The Butler Act only requires that local courts provide a plaintiff the opportunity to make an argument, not that they guarantee the plaintiff's success. <u>Id.</u> Given this reasoning and the fact that PSP has already availed itself of such an opportunity to make this argument by challenging the tax in the Commonwealth courts (though it evidently chose not to make Commerce Clause arguments), PSP's contention that the local courts do not provide a plain, speedy, and efficient remedy is meritless.

## III.

For the foregoing reasons, the judgment of the district court is <u>affirmed</u>.

-17-