In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-3221

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROYEL PAGE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:17-cr-00175-MYS-9 — **Michael Y. Scudder**, *Circuit Judge.*[*]

ARGUED NOVEMBER 9, 2022 — DECIDED AUGUST 4, 2023

Before ROVNER, JACKSON-AKIWUMI, and LEE, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. Royel Page presents two challenges to his conviction for participating in a conspiracy to sell heroin. He contends the government presented insufficient evidence at trial to justify his conviction. He also

---

[*] Of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

contends the district court committed plain error by failing to instruct the jury on the difference between a buyer-seller relationship, which is how Page characterizes his connection to the top drug dealer in his case, and a conspiracy, where two parties share some joint purpose in building a drug business together. We agree that the evidence at trial warranted a buyer-seller instruction to the jury, so we reverse and remand his conviction on that ground.

## I

In 2017, a grand jury returned a thirty-four count indictment against twelve defendants involved in selling heroin. Page was charged in just two of those counts, and not with conspiracy. Based on wiretap investigations and a search of Page's apartment, among other evidence, prosecutors alleged Terrance Hamlin purchased heroin from Torrence Harris and distributed those drugs to purported mid-level distributors like Page. Two years later, a grand jury returned a superseding indictment against Page, Harris, Hamlin, and others, charging them with a drug-trafficking conspiracy involving over 100 grams of heroin. The superseding indictment also charged Page with twelve counts of attempting to distribute and possession with intent to distribute heroin.

In 2021, Page went to trial as the only defendant who did not plead guilty. During trial, the government relied on the wiretaps and items found during the search of Page's apartment, including clear plastic bags, latex gloves, suspected heroin, a scale, and a bottle of lactose (sometimes used to cut heroin). The government also pointed to surveillance of Page getting into Hamlin's car for a short time. Hamlin served as a key witness in the government's case. The government presented

evidence that Hamlin used to sell drugs to Page's father—the family connection that introduced Page and Hamlin. Hamlin had known Page's father for over 40 years, since middle school. Hamlin and Page's relationship was so quasi-familial that Hamlin listed Page's contact in his phone as "Neph Roy," and Page was said to refer to Hamlin as "Uncle Bone." Page did not present testimony or evidence at trial, as was his right.

The instructions provided to the jury included our circuit's pattern instruction on "Membership in Conspiracy," which states, in relevant part:

> To be a member of a conspiracy, a defendant does not … need to know all of the other members or all of the means by which the illegal goals of the conspiracy were to be accomplished. The government must prove beyond a reasonable doubt that the defendant was aware of the illegal goals of the conspiracy and knowingly joined the conspiracy.

> A defendant is not a member of a conspiracy just because he knew and/or associated with people who were involved in a conspiracy, knew there was a conspiracy, and/or was present during conspiratorial discussions.

> [ … ]

> In deciding whether the defendant joined the charged conspiracy, you must base your decision only on what the defendant did or said. To determine what that defendant did or said, you may consider the defendant's own words or acts. You may also use the words or acts of other

> persons to help you decide what the defendant
> did or said.

Jury Instructions at 26 (citing Fed. Crim. Jury Instr. 7th Cir. 5.10 (2022 ed.)).

Counsel for Page did not propose a jury instruction that would have highlighted the difference between a drug conspiracy and a conventional buyer-seller relationship. The jury convicted Page on all counts and the district court imposed a below-guidelines sentence of 90 months in prison.

## II

Page contends that the district court should have instructed the jury on the difference between a drug conspiracy and a conventional buyer-seller relationship. He did not object to this missing buyer-seller instruction at trial, so we review the issue for plain error. *United States v. DiSantis*, 565 F.3d 354, 361 (7th Cir. 2009). Plain errors are those that are "(1) clear and uncontroverted at the time of appeal and (2) affected substantial rights, which means the error affected the outcome of the district court proceedings." *United States v. Trudeau*, 812 F.3d 578, 589 (7th Cir. 2016).

To get to the heart of the matter, it helps to understand first what constitutes a conspiracy, and what does not. To secure a conviction for conspiracy to distribute drugs, the government "must prove beyond a reasonable doubt that the defendant knowingly agreed, perhaps implicitly, with someone else to distribute drugs." *United States v. Hidalgo-Sanchez*, 29 F.4th 915, 924-25 (7th Cir. 2022). We have said that liability for participating in a drug trafficking conspiracy involves two main principles: First, a defendant must "have a stake in the

venture" and exhibit "informed and interested cooperation." *United States v. Vizcarra-Millan*, 15 F.4th 473, 507 (7th Cir. 2021). Second, there must be "evidence of an agreement to advance further distribution—beyond the initial transaction." *Hidalgo-Sanchez*, 29 F.4th at 925.

Characteristics that tend to distinguish a conspiracy from a buyer-seller relationship include: "sales on credit or consignment, an agreement to look for other customers, a payment of commission on sales, an indication that one party advised the other on the conduct of the other's business, or an agreement to warn of future threats to each other's business stemming from competitors or law enforcement authorities." *Id.* An individual purchasing quantities of drugs beyond those for personal consumption, frequently, and on credit, leads to "an inference of conspiracy." *Id.* But an evaluation of the existence of a conspiracy is done through a "totality-of-the-circumstances approach." *Vizcarra-Millan*, 15 F.4th at 507. And under the law of this circuit—in contrast to some of our sister circuits[1]—repeated sales of distribution-level quantities

---

[1] Our circuit does not restrict the availability of the buyer-seller instruction in ways other circuits do. Some of our sister circuits, for example, have held that a defendant is not entitled to a buyer-seller instruction when there is any pattern of large drug sales. *See, e.g., United States v. Tillman*, 765 F.3d 831, 835 (8th Cir. 2014) ("Tillman's participation in the conspiracy spanned years, with multiple drug transactions and multiple customers. Because it was not a single, isolated sale, the buyer-seller instruction was not supported by the evidence."); *United States v. Hackley*, 662 F.3d 671, 679 (4th Cir. 2011) ("[W]e have held that evidence of a continuing buy-sell relationship when coupled with evidence of large quantities of drugs, or 'continuing relationships and repeated transactions,' creates a reasonable inference of an agreement."). At least one circuit has held that a buyer-seller instruction is only applicable if the evidence shows that appellee was a buyer for personal use. *See United States v. Mitchell*, 596 F.3d

of drugs are not enough by themselves to create conspiracy liability. *Id.* (holding "circumstantial evidence of an agreement to distribute drugs" may allow for an inference of a regular buyer-seller relationship).

In the past, we have said that the line between a buyer-seller relationship and a conspiracy can be "as much an art as a science" and "blurry." *Vizcarra-Millan*, 15 F.4th at 507; *United States v. Askew*, 403 F.3d 496, 503 (7th Cir. 2005). Still, two precepts are clear: One, if the evidence shows only that two people are in a buyer-seller relationship, that is insufficient for a conspiracy conviction. *Hidalgo-Sanchez*, 29 F.4th at 925. Two, if the evidence is equally probative of a conspiracy or of a buyer-seller relationship, the tie goes to the defendant. *Id.*

Stated another way, when the evidence shows either possibility is equally likely—a conspiracy or a buyer-seller relationship—the evidence is not enough to convict for conspiracy. *United States v. Johnson*, 592 F.3d 749, 755 (7th Cir. 2010) (noting that in situations when "evidence is essentially in equipoise [and] the plausibility of each inference is about the same," a jury "necessarily would have to entertain a reasonable doubt on the conspiracy charge."). In cases where this is true—where the evidence is in equipoise—"we have never found a failure to give the buyer-seller instruction to be harmless." *United States v. Cruse*, 805 F.3d 795, 816 (7th Cir. 2015) (stating this applies when "a reasonable jury could have found that the defendant was merely a buyer from the

---

18, 25 (1st Cir. 2010) ("We hold that the district court did not plainly err in failing to give a buyer-seller instruction because the record does not support the theory that Mitchell was a mere buyer for personal use.").

conspiracy" (quoting *United States v. Meyer*, 157 F.3d 1067, 1075 (7th Cir. 1998) (cleaned))).

With this background, we turn to Page's argument and the government's evidence at trial. Page argues the court should have used the Seventh Circuit Pattern Criminal Jury Instruction 5.10(A) on the "Buyer/Seller Relationship":

> A conspiracy requires more than just a buyer-seller relationship between the defendant and another person. In addition, a buyer and seller of [name of drug] do not enter into a conspiracy to [distribute [name of drug]; possess [name of drug] with intent to distribute] simply because the buyer resells the [name of drug] to others, even if the seller knows that the buyer intends to resell the [name of drug]. The government must prove that the buyer and seller had the joint criminal objective of further distributing [name of drug] to others.

*See* Fed. Crim. Jury Instr. 7th Cir. 5.10(A) (2022 ed.).

Page contends that his involvement with Hamlin is an imperfect match to the conspiracy elements, necessitating the buyer-seller instruction, and we agree. To explain, we discuss the three main pieces of evidence the government alleged pointed to a conspiracy—all of which barely satisfy the factors suggesting a conspiracy and do as much to suggest the existence of a buyer-seller relationship.

First, the government highlighted a single instance when Hamlin allowed Page to return tainted heroin and use the resulting credit to purchase more heroin. In the wiretapped conversations, Page expressed concern to Hamlin about the

quality of the heroin Hamlin had sold him, and the problems Page's customers were having boiling it down. Page asked to swap it out for a different kind of heroin because one of his customers was too consistent a buyer to be sold substandard product. Hamlin testified that he agreed to take back the heroin based on these concerns. Later that day, Page bought 17.5 grams of heroin and paid for it with a $250 credit.

True, sales on credit or consignment are one of the factors we have found suggestive of a drug conspiracy. *Johnson*, 592 F.3d at 755. And in the government's view, Page and Hamlin's tainted heroin episode shows the kind of "shared stake in the illegal venture" distinguishing a drug conspiracy from a general buyer-seller relationship. *Askew*, 403 F.3d at 502 (upholding a conspiracy conviction where drugs were sold between individuals "sometimes at below average prices or volume discounts" and sometimes essentially on layaway); *see also, Hidalgo-Sanchez*, 29 F.4th at 926-27 (upholding a conspiracy conviction even though there was not a "consistent pattern" of sales on credit).

Equally true, however, is that this single credit-based sale in the context of Page and Hamlin's long history is not enough to rule out the possibility that the two were in a mere buyer-seller relationship. *See Vizcarra-Millan,* 15 F.4th at 510-11 (holding a $100 discount or credit on one purchase was "extremely weak evidence of conspiracy"); *United States v. Neal*, 907 F.3d 511, 516 (7th Cir. 2018) ("[O]ccasional sales on credit are consistent with an ordinary buyer-seller relationship." (cleaned)). And the government's argument that Page and Hamlin's conversations demonstrate a relationship of enhanced trust and interest in the particulars of the other's business holds as true for co-conspirators as it does for a seller

(Hamlin) invested in keeping a consistent, long-time, family-like customer (Page) happy. Hamlin even testified at trial that he cut Page's price over the course of their relationship because Page was "a good customer." A reasonable jury could find from this evidence that Page and Hamlin were in a mere buyer-seller relationship.

The government's second piece of evidence pointing to a conspiracy was that Page and Hamlin discussed buying and repackaging heroin for new customers in some northern region not identified in the record. However, these discussions did not continue, much less translate into reality, because Page was already in a separate business with buyers in that region. These unfulfilled discussions do not demonstrate an agreement to look for other customers, and they certainly are not enough to obviate the need for a buyer-seller instruction.

The government's third piece of evidence pointing to a conspiracy was that Hamlin warned Page to be discreet about both the drug business and letting Page's cousin Deon get wind of their dealings. This could suggest that Hamlin was advising Page on how to manage his business, another factor we have found suggestive of a drug conspiracy. *Johnson*, 592 F.3d at 755-56. But it is also similar to the kind of "self-preservation" warning that does not create a conspiracy inference. *See Johnson*, 592 F.3d at 757 (holding that a warning from a drug buyer to an approaching seller of police presence of the neighborhood was consistent with a buyer-seller relationship). Not to mention that the evidence showed Page and Hamlin had a relationship based on a longstanding familial connection, making it equally likely that the warnings were born of genuine solicitude, not a conspiratorial bond.

Aside from the three pieces of evidence summarized above, there was little at trial to suggest a conspiracy beyond evidence showing Page purchased "distribution quantities of heroin"—as the government puts it—over a year and a half. However, that kind of purchasing history alone is not enough in our circuit to create an inference of a conspiracy. *Vizcarra-Millan*, 15 F.4th at 506-07. It bears repeating: When the evidence permits a reasonable jury to find the defendant "was merely a buyer from the conspiracy," this court "[has] never found a failure to give the buyer-seller instruction to be harmless." *Cruse*, 805 F.3d at 816. Because the government's evidence was comparatively thin, we agree that a buyer-seller instruction was warranted, and the failure to offer one constituted plain error. We therefore remand Page's conspiracy conviction (Count 1) for a new trial with a properly instructed jury.

### III

We agree with Page that the government did not provide enough evidence at trial to render a buyer-seller jury instruction unnecessary. Page also challenges the sufficiency of the evidence supporting his conspiracy conviction. But because we remand for a new trial on Count 1 with a properly instructed jury, we need not reach this question.

**REVERSED AND REMANDED.**