DOTTIE WARD, as Administratrix de bonis non of NOAH D. PALMITIER, Deceased, Appellant, *v.* NEWBURGH SAVINGS BANK, Respondent.

Third Department, June 29, 1945.

*N. LeVan Haver,* attorney for appellant.

*Cassedy & Northrop,* attorneys for respondent.

HEFFERNAN, J.   Noah D. Palmitier, a resident of Ulster County, died on February 29, 1932, leaving an estate of approxi- mately $17,000.   He left a will which was probated on May 9, 1932, in which he named Earl Wilson Mackey as executor and trustee.   Mackey qualified as executor but so far as the record discloses he never qualified as trustee.   At the time of his death decedent had on deposit in the respondent bank the sum of $5,326.93 for which he held a savings bank passbook.

On May 17, 1932, Mackey filed with the bank proof of his appointment and qualification as executor and a waiver of the State Tax Department consenting to the transfer or withdrawal of the funds on deposit to the credit of decedent.

On July 19, 1932, Mackey made and delivered to the bank a demand note for $3,800 and in the same instrument made a collateral agreement pledging the decedent's passbook as

security for the payment of the note. The note was signed " Earl W. Mackey, Exr." In exchange for the note the bank delivered to Mackey its draft for $3,800 payable to " Earl W. Mackey ". This draft was deposited by Mackey in his personal account in the Huguenot National Bank of New Paltz and thereafter he appropriated the proceeds to his own use.

On October 28, 1932, the note not having been paid, the bank charged decedent's account with $3,857.48, that being the amount of the principal and interest.

On September 11, 1933, Mackey filed in the Surrogate's office his account as executor in which he charged himself with the sum of $17,173.55 which amount less commissions was to be distributed to those entitled thereto under decedent's will. On October 16, 1933, a decree settling the account was made which directed the disbursement of the funds in accordance with the will. No payments were ever made. Mackey misappropriated the entire estate and absconded.

Upon appellant's application Mackey was removed as executor and appellant was appointed administratrix *de bonis non* and subsequently brought this action against the bank on the theory that Mackey had no power to bind the estate by the note and that in making its draft payable to him personally the respondent was put on notice of a possible diversion of estate funds and was charged with the duty of making inquiry as to the necessity for the loan and as to the reason why Mackey desired the draft payable to himself personally and that for its failure to act accordingly the respondent breached its duty and that it was also guilty of negligence so as to render it liable in damages to the estate.

After a trial before the court without a jury appellant's complaint was dismissed as a matter of law and from that judgment she has come to this court.

It is apparent from its opinion that the trial court denied relief to appellant on the theory that an executor may pledge the personal property of the estate *for estate purposes.*

The second ground upon which the court below based its judgment is that while an executor may not bind an estate by an executory contract, he may do so by an executed one.

We do not think that the denial of relief may be sustained upon either of these theories. It is entirely immaterial whether this contract be viewed as executory or as one fully executed.

There is no dispute about the fact that the note in question was not founded upon any obligation of the testator and the court below has found that it was not made for the benefit of the estate.

Respondent asserts that upon his appointment and qualification as executor Mackey acquired title to the bank account of decedent and that he had the exclusive right to direct the payment and disposition of that account and also had authority as executor to pledge assets of the estate for estate purposes. We do not question the correctness of these contentions. Mackey as executor, however, did not acquire title to the personal property of decedent in his own right. The assets of the estate did not belong to him individually. He simply held them as trustee for the benefit of the creditors of the testator and of those entitled to distribution. (*Blood* v. *Kane,* 130 N. Y. 514.)

If respondent had simply permitted the executor to withdraw the estate deposit upon his demand there would be no basis for liability against it. He had as executor an absolute right to withdraw the deposit. He also had the right to direct the payment on checks or drafts issued by him of the entire amount on deposit and respondent would be bound to honor them. There would be nothing suspicious about either of these transactions. In neither instance would there be any duty imposed upon respondent to make inquiry as to the reason for withdrawal of the fund or for its disbursement on checks or drafts issued by the executor. If the money had been borrowed and used for estate purposes and if respondent had made its draft payable to Mackey as executor we would have a case entirely different from that here presented.

What occurred here is unusual. Mackey applied to respondent for and was given a loan of $3,800, on a note signed by him as executor. There is nothing in the instrument to indicate of what or of whom he was executor. To secure that loan he pledged decedent's bank deposit of $5,326.93. Respondent's draft was issued not to Mackey as executor but to him individually. The estate had no necessity to borrow any money and respondent was chargeable with that knowledge. It had on deposit with respondent an amount in excess of the loan. The uncontradicted proof is that the money was neither borrowed nor used for estate purposes.

The note which Mackey gave to respondent did not create a liability against the estate; it was his personal obligation. It never did and never could become a liability of the estate. (*Glenn* v. *Burrows,* 37 Hun 602; *Packard* v. *Dunfee,* 119 App. Div. 599; *Ferrin* v. *Myrick,* 41 N. Y. 315; *Austin et al.* v. *Munro et al.,* 47 N. Y. 360; *Schmittler* v. *Simon,* 101 N. Y. 554; *O'Brien* v. *Jackson,* 167 N. Y. 31; 21 Am. Jur., Executors and Administrators, § 238; 33 C. J. S., Executors and Administrators, § 203.)

The use of the word " executor " or " administrator " after the signature of a personal representative executing a negotiable instrument is treated as mere surplusage and he becomes liable individually and not in his representative capacity. Such words neither add to nor diminish the individual and personal responsibility of the person using them. (21 Am. Jur., Executors and Administrators, § 238; 33 C. J. S., Executors and Administrators, § 203.)

No rights could accrue to respondent against the estate upon this note which was Mackey's personal obligation. (*Wetmore* v. *Porter*, 92 N. Y. 76.)

Since the note, as matter of law, did not bind the estate, but was solely the personal obligation of the executor, respondent had no right to appropriate to its own use funds belonging to the estate in satisfaction of its claim against the executor individually. By doing so, it effectively accomplished a diversion of estate funds for which it must respond in damages. (*Grace* v. *Corn Exchange Bank Trust Co.*, 287 N. Y. 94, 100.)

We also think that respondent was negligent in paying the proceeds of the note to Mackey individually without inquiry as to the estate's necessity for borrowing, or of the purpose of the payment to the executor personally, especially when respondent had on deposit money belonging to the estate which made borrowing unnecessary. (*Farmers' Loan & Trust Co.* v. *Fidelity Trust Co.*, 86 F. 541; *Mass. Bonding Co.* v. *Standard Bank*, 334 Ill. 494; *Liffiton* v. *National Savings Bank of City of Albany*, 267 App. Div. 32, affd. 293 N. Y. 799.)

It is also urged by respondent that it made no difference to appellant whether the draft was made payable to Mackey as executor or to him personally. The difference is indeed vital. Mackey deposited the draft payable to him personally in the Huguenot Bank from which the funds were thereafter withdrawn. Had the draft been payable to Mackey as executor and had the Huguenot Bank permitted such a draft to be deposited in Mackey's personal account it would have become liable to the estate. (*Powell* v. *Freeport Bank*, 200 App. Div. 432.)

Nothing decided in the three cases (*Smith* v. *Second Nat. Bank*, 169 N. Y. 467; *Matter of Heinze*, 224 N. Y. 1; *Matter of Forbes*, 213 App. Div. 338) relied on by the court below will support a broad power in the executor to bind the estate by a transaction such as we have here. The cases cited are all distinguishable from the one before us.

In the *Smith* case (*supra*) an ancillary administrator borrowed money from a bank and pledged a bond of the estate as security

therefor. It conclusively appeared, according to the opinion of the court, that, when he applied for the loan the administrator expressly represented that he wished to borrow "money for the purposes of the estate in anticipation of income." The court further stated that it did not appear "what this money was actually used for". Under these peculiar facts the estate was held liable.

In the *Heinze* case (*supra*) all that was determined was that, in a discovery proceeding, a surrogate could not decide whether a contract, between an administratrix and a relative of hers, for the sale of a block of stock belonging to the estate, was or was not fraudulent because of the inadequacy of the price.

In *Matter of Forbes* (*supra*) the court held that a bank, which loaned money to an executor for the legitimate estate purposes of purchasing a monument for decedent's grave and of making advancements to decedent's widow, was not limited to a recovery against the executor personally, but would be subrogated to the rights of the executor against the estate.

All the equities in this case are with appellant. Due to respondent's carelessness Mackey was enabled to divert to himself funds of the estate. Morally and legally respondent must be held to be a participant in the unlawful diversion.

The judgment appealed from should be reversed on the law and facts and judgment is directed in favor of plaintiff and against defendant for the sum of $3,857.48, with interest and costs in this court and in the court below.

BREWSTER and LAWRENCE, JJ., concur; HILL, P. J., dissents; FOSTER, J., taking no part.

Judgment reversed on the law and facts and judgment directed in favor of plaintiff and against defendant for the sum of $3,857.48, with interest and costs in this court and the court below.

The court hereby reverses findings Nos. 13, 14 contained in the court's decision.

The court annuls conclusions of law Nos. 2, 3, 4, 5, 6, 9, 10 and 11.

The court makes the following findings of fact contained in plaintiff's requested findings, X, XI, XII, XIII, XVI, XVII, XVIII, XIX, XX, XXI, XXII, XXIII, XXIV, XXV, XXVI.

The court also adopts as conclusions of law the requested conclusions submitted by plaintiff to the court below and numbered 1–17, inclusive.