In the Matter of the Accounting of JOSEPH NOVOBELSKE, as Executor of JENNIE KANIA, Deceased.

Surrogate's Court, Broome County, December 11, 1953.

*Matthew J. Armstrong* for executor, petitioner.

*Harry S. Travis* for Rita Norton and others, respondents.

*John V. Romagnoli, Corporation Counsel* (*John J. Connerton* of counsel), for Commissioner of Public Welfare of City of Binghamton.

PAGE, S.  Jennie Kania died on the 31st day of October, 1952, and her will was admitted to probate in this court on the 25th day of November, 1952.  During the course of the executor's administration of the estate, a claim was filed by the City of Binghamton in the sum of $12,896.83 for reimbursement of public assistance which, during the lifetime of deceased, had

been extended by the welfare department of the City of Binghamton to Lottie Semcho, a daughter of deceased, and her children, and to Chester Kania, a son of deceased, and his wife and children.

It is conceded that the deceased, throughout the periods of time during which this public assistance was extended was not, because of the provision of subdivision 1 of section 101 of the Social Welfare Law, of such " sufficient ability " as would have constituted a basis for a suit against her such as there might have been had she been a person possessed of greater wealth.

On the date of death of the deceased, provisions of the Social Welfare Law with which we are presently concerned were as follows: (1) subdivision 1 of section 101: " The husband, wife, father, mother, grandparent or child of a recipient of public assistance or care or of a person liable to become in need thereof shall, if of sufficient ability, be responsible for the support of such person. Step-parents shall in like manner be responsible for the support of minor step-children " and (2) subdivision 1 of section 104: " A public welfare official may bring action against a person discovered to have real or personal property, or against the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property, if such person, or any one for whose support he is or was liable, received assistance and care during the preceding ten years, and shall be entitled to recover up to the value of such property the cost of such assistance or care. Any public assistance or care received by such person shall constitute an implied contract."

By chapter 838 of the Laws of 1953, subdivision 1 of section 104 of the Social Welfare Law was amended. This amendment consisted solely of adding to the above-quoted language of the subdivision a new sentence as follows: " No claim of a public welfare official against the estate or the executors, administrators and successors in interest of a person who dies leaving real or personal property, shall be barred or defeated, in whole or in part, by any lack of sufficiency of ability on the part of such person during the period assistance and care were received." The effective date of this amendment was April 19, 1953. Thus it appears that the death of the testatrix had occurred previously.

It is, in effect, stipulated that the claim of the City of Binghamton must stand or fall according to whether or not this amendment is applicable to its resolution. The answer to this question is dependent upon whether or not this amendment must or may be construed as retroactive to include a claim which did not, previous to the date of the testatrix' death, exist, and which

came into being only by reason of a subsequent legislative enactment.

It is contended by the claimant that, although the vast majority of all statutes are not retrospective, but prospective only, the present instance constitutes an exception to the usual construction of the applicability of a statute in respect to its bearing and effect upon a status or condition precedent to its enactment. Authority in support of this contention is advanced by endeavoring to show that the present case is closely analogous to and governed by the case of *Brearley School* v. *Ward* (201 N. Y. 358–379).

This was a case involving the applicability of a statute modifying a precedent exemption statute to the effect that a judgment creditor, unable to satisfy his judgment by an ordinary execution, might resort to garnishment of a judgment debtor's income from a trust which, free of any subjectment to being levied upon, had been in operation before the enactment of the statute construed in that case. The Court of Appeals, in a four to three decision, held in favor of the judgment creditor. That is, that the statute was applicable.

It is true that on principle, at least at first glance, the present situation appears to be fairly analogous to that dealt with in the *Brearley* case. The Court of Appeals determined that the statute there in question was legislatively intended to apply to trusts in existence on its effective date. In that case, one of the questions considered by the court was whether the situation involved some right, title or interest that, regardless of legislative intent, could not be abolished or modified by the application of a subsequent statute making the trust income, to the extent of 10% thereof, nonexempt.

The court then proceeded to discuss at great length the question as to an unconstitutional impairment of a contract. It drew a distinction between enlarging exemptions and restricting them. A statute of the latter type would not impair the obligation of any contract between the judgment debtor and judgment creditor but, on the contrary, by rendering it more easily enforcible, would strengthen it. As to the concept of a contract between the State and the cestui, the court held that upon no theory could the case be considered as involving any such tenable theory, in that connection stating, " That [the original exemption law] was simply part of the law of the state as it stood at the time [the time the trust was created]. In enacting such laws the legislature does not enter into any contract with its citizens " (*supra*, p. 368).

As previously observed, in the *Brearley* case the court also considered the theory that the statute there in question, if construed as having been legislatively intended to be operative retroactively, would be unconstitutional by reason of its depriving the owner of property (the trust income) of his possession thereof without due process of law. This proposition was disposed of by holding that (p. 372), " a party has no vested right in a defense to a contract which he has actually made and which he is under a moral obligation to perform," and further (p. 373), that " It is a general rule of constitutional law that a citizen has no vested right in statutory privileges and exemptions ", and that (p. 375), " ' Debtors have no vested right not to pay their debts,' " and that (p. 375), " ' Exemption of property from levy and sale for the payment of debts is but a privilege for the time being — mere grace and favor, dependent on the will of the state.' * * * it may be said that to compel a man to apply his property to the payment of his debts is not to deprive him of his property within the meaning of the Constitution."

This *Brearley* case indicates that special considerations are applicable in cases such as that involving the construction of a statute abolishing or modifying a previously existing exemption. The present case presents no such question, and, in my view, is otherwise quite distinguishable.

Our first consideration is directed to the question of legislative intent relative to the retroactive applicability of the statutory amendment here in question. It is innocent of an expression of the Legislature's intent, if any, relative to this question. As stated in McKinney's Consolidated Laws of New York (Book 1, Statutes [1942 ed.], § 53): " A pre-existing right or liability, whether or not it is constitutionally protected from change, will not be affected by legislation, unless legislative intent to the contrary is obvious. The doubts, if any, will be resolved in favor of holding the subsequent statute to be prospective only ", citing *Burch* v. *Newbury* (10 N. Y. 374) together with some twenty-seven other and later New York cases.

In the present case we must be guided by this vast body of authority to the effect that, in the absence of any indication of legislative intent to the contrary, its application must be limited to appropriate situations arising subsequent to its enactment. This observation would be accentuated in any instance of a statute in derogation of the common law such as this is, since there never was any common-law liability such as contemplated by the above-quoted provisions of the Social Welfare Law.

The authorities above referred to seem to be sufficient to support a conclusion herein that the presumption that, in the absence of any clear indicia to the contrary, the legislative intent was to limit a statute such as that with which we are presently concerned to prospective applications only. But the claimant's position herein is that, since, if the testatrix had been a person possessed of much greater wealth than she had, in her lifetime, she would have been liable in respect to its claim; that, being now deceased, the former limitation upon her liability, the necessity for her own personal support, is now gone; that, in view of this consideration, together with the language of the amendment in question, not expressly limiting its application to the future, and being a remedial statute, that the legislative intent is sufficiently clear to the effect that this amendment is applicable to *all* cases including such as that presently before us as a means of reaching assets in the hands of a legal representative, that is, before the estate has been finally settled by a distribution thereof among the persons entitled thereto as distributees or legatees. It is because of these points in the argument of the claimant that, in order to properly consider their validity or nonvalidity in their application to the present facts, we pass on to further considerations having a bearing as to whether or not the present claim is tenable.

The contention advanced on the part of the surviving children of the deceased is that, immediately upon the death of their mother, they became vested of equal rights in her net estate because, by words of present gift and *nominatim,* the will so provides; that, therefore, this 1953 amendment of the Social Welfare Law cannot be held to be applicable insofar as their rights are concerned, for to apply its provision in the present case would be to deprive them of their vested property interests without due process of law, and that the claimant, in the present case, is, therefore, seeking an unconstitutional application of the provision of this amendment.

On the other hand, the position taken by the claimant is that the contention of the will beneficiaries as to alleged vested interests accruing to them as of the date of their mother's death is a fallacious assumption on their part. That is, that, the amendment having been enacted and having become effective during the course of the executor's administration of the estate, the claim is squarely within the provision of this amendment, for upon the testatrix' death title to the personal property of which she died possessed passed to the executor and not to the beneficiaries of her will and, therefore, the legatees could not have

had any legal title thereto at the date the amendment became effective.

The consideration of these opposed contentions involves a determination of the applicability of certain well-established principles. In skeleton form, these are (1) a civil statute assuming to retroactively destroy or impair vested proprietary rights, like an ex post facto criminal statute, would constitute a deprivation thereof beyond the power of the Legislature; (2) subdivision 1 of section 104 of the Social Welfare Law, as amended by chapter 838 of the Laws of 1953, not only impairs vested rights in and to the net estate herein for distribution in accordance with the testamentary provisions therefor but, since the net estate is of approximately the same amount as the claim, completely destroys them, and (3) therefore, the statutory amendment here in question, insofar as its application to the present situation is concerned, would be and is untenable.

As to the above-stated number one postulate or major premise, there cannot be any serious question as to its soundness. It is well established that, even in an instance where it intended to do so, the Legislature is without power to enact a law which destroys or impairs pre-existing vested rights, titles and interests. A statute which assumes to do so is sometimes regarded as being in violation of the " due process of law " provisions of the Federal and State Constitutions. In any event, it is not within the power of the Legislature to enact a law having such an application.

Cases upholding the protection of vested property rights against the operation of an " ex post facto " statute are very numerous. An early case stating and upholding this principle is *Burch* v. *Newbury* (10 N. Y. 374, 392, *supra*) where the Court of Appeals said, " It is a familiar principle in jurisprudence, that a statute shall not have a retrospective effect so as to destroy a vested right ", citing *Mann* v. *Eckford's Executors* (15 Wend. 502, 519). Of the same category are such cases as *People* v. *Powers* (147 N. Y. 104, 109) wherein the court said: " The provisions of the will must be considered as of the time of the testatrix' death, and under the law as it then existed. The Law of 1893, chapter 701, has no application, for it was not within the province or power of the legislature to change vested rights of persons or parties in property ", citing *White* v. *Howard* (46 N. Y. 144) and *Dammert* v. *Osborn* (140 N. Y. 30, 43).

More recent cases to the same effect are *Hastings* v. *Byllesby & Co.* (293 N. Y. 413) and *Shielcrawt* v. *Moffett* (294 N. Y. 180).

The second postulate or minor premise may be not quite so

free of difficulty. In the consideration of our present problem, might this be a statement harboring some illusory concept or assumption? In a case of devolution of personal property upon the death of its owner, the answer to this question depends upon what, if anything, by way of vesting of some right, title or interest in his distributees or testamentary beneficiaries occurs immediately upon his death.

Authorities in New York, and generally throughout all Anglo-Saxon jurisdictions are clear as to real property to the effect that title upon the death of a testator vests immediately in devisees. In cases of intestate successions, the same would be true as to distributees. It is likewise as to personal property, the subject of a specific bequest. Any of such vestings is subject only to an encumbrance in every case where there is or later turns out to be a deficiency in the amount of personal property, the liquidation of which is necessary for the payment of obligations of the estate, that is personal property which would otherwise pass to distributees, or, according to testamentary provisions, to general and residuary legatees. The determination of the extent or amount of such an encumbrance and the extinguishment thereof is dependent upon the existing situation in any particular estate as to the discharge of the funeral and administration expenses and debts thereof.

It is well established by precedents that, as it does in the case of real property, immediately upon its owner's death, legal title to personal property does not pass to the ultimate successors in interest. This concept results in an anomalous situation. Where is the legal title between a decedent's death and the later time when a legal representative is duly appointed? Under modern conditions, the former sacrosanct attitude in relation to real property having been in other connections largely discontinued, is there any need that this distinguishment as to the devolution of legal title between the two classes of property should be continued? It would seem that this awkward joker in the law in relation to such a distinction between real property and personal property might well be eliminated. This could be done by holding that legal title in both classes of property, subject to a legal representative's administration and a lien to the extent of the amount necessary to discharge all the estate obligations, upon a decedent's death, passes immediately to the beneficiaries of his will or distributees.

However, in the present case it is entirely unnecessary to depart from this time-honored concept in regard to the devolution of title to personal property of which a decedent dies

possessed. It seems to have been invariably recognized that the equitable title or interest in personal property does pass immediately to legatees or next of kin according to whether the succession is testate or intestate.

In the case of *Blood* v. *Kane* (130 N. Y. 514, 517) the Court of Appeals stated, " An executor, as such, takes the unqualified legal title of all personalty not specifically bequeathed, and a qualified legal title to that which is so bequeathed. He holds not in his own right, but as a trustee, for the benefit (1) of the creditors of the testator, and (2) of those entitled to distribution under the will, or if not all bequeathed, under the Statute of Distributions " and, in the same case (p. 519) this court quoted, apparently with approval, from an English case (*Cooper* v. *Cooper*, L. R. 7 E. & I. App. 53), the statement that, " ' The rule of the Statute of Distributions, which requires the conversion of an intestate's estate into money, is introduced simply for the benefit of creditors, and the facility of division among the next of kin. But, as regards the substantial title to property, the right of the next of kin (subject only to the claims of creditors) is complete.' "

In *Ward* v. *Newburgh Sav. Bank* (269 App. Div. 525, 528) in a case involving an issue of negligence on the part of a bank in permitting an executor to withdraw estate funds which he appropriated to himself, our Third Department stated, " Mackey as executor, however, did not acquire title to the personal property of decedent in his own right. The assets of the estate did not belong to him individually. He simply held them as trustee for the benefit of the creditors of the testator *and of those entitled to distribution*." (Italics supplied.) As authority for this statement, the court cited *Blood* v. *Kane* (130 N. Y. 514, supra).

Another authoritative case is *Brewster* v. *Gage* (280 U. S. 327, 334) where, in this connection, the opinion by Mr. Justice BUTLER, among other things stated: " Upon the death of the owner, title to his real estate passes to his heirs or devisees. A different rule applies to personal property. Title to it does not vest at once in heirs or legatees. *United States* v. *Jones*, 236 U. S. 106, 112. But immediately upon the death of the owner there *vests* in each of them the *right* to his distributive share of so much as shall remain after proper administration and the right to have it delivered upon entry of the decree of distribution. *Sanders* v. *Soutter*, 136 N. Y. 97. *Vail* v. *Vail*, 49 Conn. 52. *Cook* v. *McDowell*, 52 N. J. Eq. 351. Upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to

the estate; it is taken, not for themselves, but in the right of others for the proper administration of the estate and for distribution of the residue. The decree of distribution *confers no new right*; it merely identifies the property remaining, evidences right of possession in the heirs or legatees and requires the administrators or executors to deliver it to them. The legal title so given *relates back to the date of the death. Foster* v. *Fifield,* 20 Pick. 67, 70. *Wager* v. *Wager,* 89 N. Y. 161, 166. *Thompson* v. *Thomas,* 30 Miss. 152, 158.'' (Italics supplied.)

The synthesis of these cases, at least, is to the effect that, though title vests in the executor, this is a vesting of legal title analogous to that in the case of a trustee. In fact, the executor is a trustee, first, for creditors of the estate and, second, for legatees under the will of his testator. He holds legal title, but subject only to the composite effect of the estate's obligations, the legatees acquired the equitable title upon their testator's death. It is only as to the legal title and vesting in possession that they may be held up for seven months or more before the account and decree thereupon results in the merger in them of their respective equitable and legal titles.

Applying the principles enunciated in the above-cited authorities to the present situation, it seems clear that the legatee-respondents herein, immediately upon the death of their mother, became equitably vested with the right to receive their respective legacies, subject only to whatever reduction therein might be required in order to pay off all the obligations of the estate as such obligations existed at the date of the testatrix' death, together with nothing more than the funeral and administration expenses incurred thereafter. This being so, the presently proposed application of subdivision 1 of section 104 of the Social Welfare Law cannot be sustained. The claim of the City of Binghamton, therefore, must be dismissed as to all of the legatees under the deceased's will except two of them who have made assignments of their interests to the department of public welfare.

Settle decree accordingly.