13-3954-cv
Asarco LLC v. Goodwin

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

―――――――――

August Term, 2013

(Argued: April 7, 2014     Decided: June 25, 2014)

Docket No. 13-3954-cv

―――――――――

ASARCO LLC,

*Plaintiff-Appellant,*

— v. —

NEVA R. GOODWIN, S. PARKMAN SHAW, AND WILLIAM A. TRUSLOW, as Trustees of the Trust under Article Second of the Will and Codicils of John D. Rockefeller for the benefit of John de Cuevas and his descendants, and as Trustees of the Trust under Article Second of the Will and Codicils of John D. Rockefeller for the benefit of Elizabeth de Cuevas and her descendants,

*Defendants-Appellees.*[*]

―――――――――

――――――――――――――

[*] The clerk of court is respectfully directed to conform the caption to that shown above.

B e f o r e:

KEARSE, JACOBS, and LYNCH, *Circuit Judges*.

_____

Plaintiff-appellant ASARCO LLC ("Asarco") appeals from a judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*) dismissing its Second Amended Complaint. As part of Asarco's Chapter 11 bankruptcy, Asarco paid the United States, the State of Washington, and the Port of Everett $50.2 million to resolve certain environmental claims arising from the release of hazardous substances at two sites in Washington State. Pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675 ("CERCLA"), Asarco, having emerged from bankruptcy, then sought contribution, directly and on a subrogation theory, from the Trustees of the residuary trusts created by the will of John D. Rockefeller Sr., the current beneficiaries of which are his great-grandchildren, alleging that the remediation costs were fairly attributable to the activities of corporations controlled by Rockefeller as owner and operator of the contaminated sites. Assuming without deciding that New York law permits the imposition of liability on testamentary beneficiaries in such

2

circumstances, we conclude that the district court properly dismissed Asarco's direct contribution claims because they are barred by the applicable three-year statute of limitations, and that its subrogation claims were properly dismissed because Asarco is not a subrogee.

AFFIRMED.

––––––––––––

E. DUNCAN GETCHELL, JR. (Eugene E. Matthews III, Richard C. Beaulieu, K. Elizabeth Sieg, *on the brief*), McGuireWoods LLP, Richmond Virginia; Dion W. Hayes, Marshall Biel, *on the brief*, McGuireWoods LLP, New York, New York; Gregory Evans, *on the brief*, Integer Law Corporation, Los Angeles, California, *for Plaintiff-Appellant*.

EDWARD M. GRAUMAN, Beveridge & Diamond, P.C., Austin, Texas (Stephen L. Gordon and Megan R. Brillault, Beveridge & Diamond, P.C., New York, New York, *on the brief*), *for Defendants-Appellees.*

––––––––––––

GERARD E. LYNCH, *Circuit Judge*:

This case requires us to decide whether, in 2014, the Trustees of the residuary trust created by the will of John D. Rockefeller Sr. in 1937 may be made to contribute to cleanup costs of environmental contamination allegedly caused by corporations controlled by Rockefeller in Washington State between 1892 and

3

1903.  The answer to that question turns on a number of provisions of federal and state law.

The Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675 ("CERCLA"), imposes liability for cleanup costs on persons who are responsible for the release or threatened release of hazardous substances into the environment.  See 42 U.S.C. § 9607(a).  A party who has been sued for such contamination may then seek contribution from others in the chain of title or from certain polluters – the so-called potentially responsible parties.  Such potentially responsible parties include, as relevant here, the owners and operators of the property at the time of the hazardous waste disposal.  See id. § 9613(f).  While CERCLA does not expressly permit contribution claims against successors-in-interest, such as beneficiaries of the estates of such potentially responsible parties, our precedents require us to analyze applicable state law to determine whether such liability may be imposed.  See Marsh v. Rosenbloom, 499 F.3d 165, 181-84 (2d Cir. 2007).  Here, the applicable state law is a provision of New York probate law, see N.Y. Est. Powers & Trusts Law § 12-1.1(a), which holds testamentary beneficiaries liable for certain debts of a decedent.  Where the applicable state law would

4

permit such contribution claims, those claims must be brought within three years of "the date of . . . entry of a judicially approved settlement with respect to such costs." 42 U.S.C. § 9613(g)(3)(B). Separately, CERCLA requires subrogation claims to be brought within three years of the payment of a claim. See id. § 9613(g)(4).

Plaintiff-appellant ASARCO LLC ("Asarco") appeals from a judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*) dismissing its Second Amended Complaint. As part of its Chapter 11 bankruptcy, the United States Bankruptcy Court for the Southern District of Texas (Richard S. Schmidt, *Bankruptcy Judge*) approved two settlement agreements related to the environmental contamination at the Everett Smelter and the Monte Cristo Mining Area (together, "the Sites"), located in Washington State. As a result of those settlements, Asarco eventually paid the United States, the State of Washington, and the Port of Everett $50.2 million for costs related to the remediation of the Sites. Asarco then sought contribution, directly and as a purported subrogee, from the Trustees of the residuary trusts created by the will of the late John D. Rockefeller, which now benefit his great-grandchildren, alleging that the remediation costs were fairly attributable to activities of

5

corporations controlled by Rockefeller, which owned and operated the contaminated sites.

We assume *arguendo* that New York law permits the imposition of liability on testamentary beneficiaries in such circumstances, but nevertheless conclude that the district court properly dismissed Asarco's contribution claims because they are barred by the applicable three-year statute of limitations, and its subrogation claims because Asarco is not a subrogee. We therefore AFFIRM the judgment of the district court.

## BACKGROUND

The Second Amended Complaint, and the bankruptcy documents it references, set forth the following facts, which we must accept as true in adjudicating a motion to dismiss under Rule 12(b)(6), drawing all reasonable inferences in Asarco's favor. Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC, 568 F.3d 374, 377 (2d Cir. 2009).

I.     Facts

Located in the Mt. Baker-Snoqualmie National Forest in Snohomish County, Washington, the Monte Cristo Mining Area ("MCMA") includes several large mine complexes, and the former site of an ore processing and concentrating

facility. The former Everett Smelter plant property and surrounding area are located in Everett, Washington, some 40 miles from the MCMA. Predecessors of Asarco, a limited liability company organized under Delaware law, operated Everett Smelter from approximately 1903 to 1912, and the MCMA from approximately 1903 to 1905. Before Asarco's operation of the Sites, the Puget Sound Reduction Company ("PSRC") held legal title to the Everett Smelter, which was PSRC's principal business activity. PSRC "was operated by [John D.] Rockefeller directly and through his personal agents acting at his direction and under his control." J.A. 72, ¶ 4. Rockefeller also had interests in companies that owned or operated several of the MCMA mines. Asarco alleged, and the district court assumed *arguendo* that Rockefeller's control of those corporate entities was exercised in a manner that warrants piercing the corporate veil and imposing personal liability on Rockefeller for the actions of those corporations.

Between 1892 and 1903, under Rockefeller's ownership and operation of the Sites, substantial quantities of slag – a material containing various hazardous substances – and smelting wastes were discharged at the Everett Smelter. Further, various mining wastes were discharged at the MCMA as a result of the mining activities, as well as the storage, processing, and transportation of mining

7

ore. The discharge of those waste products caused various hazardous substances, including arsenic, lead, and other heavy metals and metal-like substances to be released into the environment, contaminating the Sites.

Rockefeller died in 1937. In his will and its codicils, he established a residuary trust for the primary lifetime benefit of his granddaughter, Margaret Strong de Cuevas, which upon her death was divided into two separate trusts for the benefit of her children, Rockefeller's great-grandchildren. Those trusts, which will not terminate until the deaths of those great-grandchildren, still contain substantial assets received directly from Rockefeller's estate or derived from the original assets so received.

## II. Prior Proceedings

### A. Bankruptcy Proceedings

On August 9, 2005, Asarco filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas. The United States, State of Washington, and the Port of Everett filed proofs of claim for remediation costs, future response costs, and natural resource damages. On April 18, 2008, pursuant to

Federal Rule Bankruptcy Procedure 9019(a),[1] the Bankruptcy Court approved a settlement of the Everett Smelter claims. Under the terms of the settlement, the State of Washington and Port of Everett were allowed a general unsecured claim in the amount of $38 million, to be allocated between the two. On June 5, 2009, the bankruptcy court approved a similar agreement under which the State of Washington and the United States were allowed general unsecured claims totaling just over $12.2 million, settling the MCMA claims.[2] Both settlements became effective when they were approved by the bankruptcy court. The bankruptcy court approved Asarco's Reorganization Plan on November 13, 2009, and the Plan became effective on December 9, 2009. The Everett Smelter and MCMA claims were paid on the latter date.

---

[1] "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a).

[2] The Trustees dispute the amount of the MCMA settlement, but the precise size of the settlement does not affect the resolution of the issues before us.

B.      District Court Proceedings

After emerging from its Chapter 11 bankruptcy reorganization, Asarco pursued its right under CERCLA to require other potentially responsible parties to reimburse it for those parties' fair share of remediation costs. Asarco filed the original complaint in this action against the Trustees on May 10, 2012, alleging substantial response costs and seeking contribution for Rockefeller's environmental liabilities at the Everett Smelter site only. Asarco amended its complaint on July 17, 2012, to include a similar claim for contribution for Rockefeller's liabilities at MCMA. The Trustees moved to dismiss the Amended Complaint, and with the consent of the Trustees and leave of the district court, Asarco filed its Second Amended Complaint on October 25, 2012. The Second Amended Complaint included two additional claims against the Trustees for contribution at both sites, by Asarco as subrogee of itself as the former debtor-in-possession and predecessor-in-interest. The Trustees moved to dismiss the Second Amended Complaint, and the district court granted the motion in an oral ruling.

The district court noted that under CERCLA the owner and operator of a facility is liable for cleanup costs, and assumed "that if John D. Rockefeller were

10

alive today, he [could] be held liable as the owner and perhaps even the operator" of the Sites. J.A. 451. The district court refused, however, to impose such liability on the beneficiaries of Rockefeller's estate. First, citing New York Estates, Powers & Trusts Law § 12-1.1(a),[3] the district court held that any liability under CERCLA or for contribution could not be a "debt" of John Rockefeller because "CERCLA didn't even exist at the time of his death." Second, relying on this Court's decision in Marsh v. Rosenbloom, 499 F.3d 165 (2d Cir. 2007), the district court concluded that the Trustees could not be held liable under a "theory of trust fund liability." J.A. 455.[4]

The district court then addressed the Trustees' other defenses. Under 42 U.S.C. § 9613(g)(3)(B), no action for contribution may be commenced more than

---

[3] "Subject to the other provisions of this article, distributees and testamentary beneficiaries are liable, in an action, to the extent of the value of any property received by them as such, for the debts and reasonable funeral expenses of a decedent, the expenses of administering his estate and all taxes for which the estate is liable, which have not previously been recovered from the personal representative or from any other source . . . ." N.Y. Est. Powers & Trusts Law § 12-1.1(a).

[4] "Under a trust fund theory, a beneficiary is deemed to hold the assets received from a liable party's estate in trust for the benefit of satisfying environmental liabilities of a deceased, responsible person." North Carolina ex rel. Howes v. W.R. Peele, Sr. Trust, 876 F. Supp. 733, 743 (E.D.N.C. 1995).

11

three years after "the date of . . . entry of a judicially approved settlement with respect to such costs." Because the bankruptcy court approved a settlement as to the Everett Smelter Site on April 18, 2008, the district court concluded that the three-year statute of limitations for the Everett Smelter claim expired on April 18, 2011, more than a year before this action was commenced on May 10, 2012. Similarly, the bankruptcy court approved a settlement as to the MCMA on June 5, 2009, and thus the three-year statute of limitations expired on June 5, 2012. No claims regarding the MCMA were filed, however, until July 17, 2012, the date of the first amended complaint. The district court determined that with respect to the claims relating to the MCMA, the first amended complaint did not relate back to the original May 10, 2012 complaint.

The district court rejected Asarco's argument that the statute of limitations did not begin to run as to any of its claims until December 9, 2009, "when the plan of reorganization became effective and the payments were made." J.A. 425. While agreeing that "the bankruptcy proceeding is not finished until it is indeed finished," id. at 456, the district court noted that the bankruptcy court "literal[ly]" approved settlements in April 2008 and June 2009, which "were not the subject of renegotiation or review in any meaningful way," id., and that the limitations

12

periods for the contribution claims began to run on the dates when the settlements were thus approved.

Finally, the district court rejected Asarco's arguments that it could invoke the statute of limitations for CERCLA subrogation claims, 42 U.S.C. § 9613(g)(4). That provision also provides a three-year statute of limitations, but it is instead triggered upon "payment of [a] claim" rather than the entry of a judicially approved settlement. The district court determined that "the kind of transactions which are necessary to create subrogation simply did not take place in the bankruptcy of ASARCO," J.A. 457, because an entity cannot be "subrogated to pay [its] own liability," id. at 428. Asarco timely filed a notice of appeal, and we now affirm.

## DISCUSSION

On appeal, Asarco contends that the district court erred in dismissing its complaint for several reasons. It argues (1) that the district court erroneously refused to apply the "trust fund theory," a common law doctrine under which beneficiaries of estates have been held liable for a decedent's personal CERCLA liability; (2) that, contrary to the district court's conclusion, New York probate law expressly permits holding testamentary beneficiaries liable for the debts of a

13

decedent imposed by a later enacted retroactive statute; (3) that the district court erred in concluding that Asarco's direct contribution claims were barred by the three-year statute of limitations in 42 U.S.C. §§ 9607(e)(2) and 9613(g)(3)(B); and (4) that the district court erroneously concluded that Asarco could not pursue a subrogation claim under 42 U.S.C. § 9613(g)(4) because the transactions at issue in Asarco's bankruptcy did not meet the basic requirements of subrogation. After setting forth the applicable legal standards, we address each of those arguments in turn.

I.    Legal Standards

    A.    Standard of Review

We review de novo a district court judgment granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "accepting all factual allegations in the complaint as true." Absolute Activist Value Master Fund Ltd. v. Ficeto, 677 F.3d 60, 65 (2d Cir. 2012) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "In adjudicating a motion to dismiss, a court may consider only the complaint, any

14

written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." In re Thelen LLP, 736 F.3d 213, 219 (2d Cir. 2013).

B. CERCLA

"CERCLA's primary purposes are axiomatic: (1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." Price Trucking Corp. v. Norampac Indus., 748 F.3d 75, 79 (2d Cir. 2014) (internal quotation marks omitted). "To effectuate those goals, CERCLA looks backward in time and imposes wide-ranging liability." Marsh, 499 F.3d at 178. Thus, somewhat akin to the common law rules applicable to ultra-hazardous activities, the statute imposes strict liability on facility owners and operators, on persons who arranged for the disposal or treatment of hazardous waste at the relevant site, and on persons who transported hazardous waste to the site, often collectively referred to as potentially responsible parties. See 42 U.S.C. § 9607(a)(1)-(4);[5] Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc., 596 F.3d

---

[5] CERCLA defines four classes of persons as potentially responsible parties:
> (1) the owner and operator of a vessel or a facility,
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at

112, 120 (2d Cir. 2010).

But CERCLA "provide[s] property owners an avenue of reprieve; it allows them to seek reimbursement of their cleanup costs from others in the chain of title or from certain polluters — the so-called potentially responsible parties." Niagara Mohawk, 596 F.3d at 120. In this case, the relevant avenue of reprieve is 42 U.S.C. § 9613(f)(3)(B), which provides a right of contribution to property owners that have settled their CERCLA liability with a state or the United States through either an administrative or judicially approved settlement.

The parties agree, because the complaint in this matter was dismissed for failure to state a claim, that if Rockefeller were alive today, he would be liable

_____

which such hazardous substances were disposed of, (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance.

42 U.S.C. § 9607(a)(1)-(4).

16

under CERCLA, as either an owner or an operator of the Sites. There is also no dispute that Asarco settled its CERCLA liability through a judicially approved settlement. The question ,therefore, is whether CERCLA permits a right of contribution against the beneficiaries of a potentially responsible party's estate.

II.     Asarco's Arguments

   A.     Trust Fund Theory Under Federal Law

We acknowledge at the outset that "CERCLA does not contain any provision that imposes liability directly upon the estates of [the] four classes of [potentially] responsible parties," Witco Corp. v. Beekhuis, 38 F.3d 682, 689 (3d Cir. 1994), much less the beneficiaries of such estates. That cannot end the inquiry, however, because our precedents make clear that under some circumstances, the liability of potentially responsible parties may pass to certain of their successors-in-interest. For example, while "CERCLA does not specifically provide that a successor corporation may be held liable for response costs," New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 206 (2d Cir. 2006),we have held that CERCLA encompasses such successor liability, see id.

Asarco contends that we should craft a rule of federal common law under CERCLA mandating that a decedent's personal liability is transferred to those

who benefit from the decedent's estate, a rule known as the "trust fund doctrine." Appellant's Br. 17; see W.R. Peele, Sr. Trust, 876 F. Supp. at 743. Such an approach, however, is foreclosed by our precedents. As we recently reiterated, "where federal statutory regulation is comprehensive and detailed, as CERCLA is, we presume that matters left unaddressed are left subject to the disposition provided by state law." Price Trucking Corp., 748 F.3d at 84 (internal quotation marks omitted).

Our decision in Marsh, 499 F.3d at 165, illustrates that principle. There, the State of New York appealed from an order dismissing its claims under CERCLA against the shareholder-distributees of a dissolved Delaware corporation. The relevant provision of Delaware law established "a three-year continuation period, beginning at dissolution, for dissolved corporations to wind up their affairs and for unknown claimants to assert claims against the corporation." Id. at 170 (citing Del. Code Ann. tit. 8, § 278). The state asserted its claims "several years after [the corporation] had been dissolved, [and] outside the corporate wind-up period" established by Delaware law. Id. at 169. In affirming the district court's dismissal, we declined to create a rule of federal common law that would have displaced Delaware law regarding actions against dissolved

18

corporations, concluding that "CERCLA does not suggest that the entire corpus of state corporation law is to be replaced simply because a plaintiff's cause of action is based upon a federal statute." Id. at 180 (internal quotation marks omitted).

The same conclusion necessarily obtains with respect to federal claims against decedents' estates, which, by longstanding precedent, are governed by state probate law and procedures, unless federal law specifically provides otherwise. See, e.g., Pufahl v. Parks' Estate, 299 U.S. 217, 225 (1936); Forrest v. Jack, 294 U.S. 158, 162-63 (1935). CERCLA gives no indication of any intention to displace state probate law, any more than it displaces state law regarding successor liability in the case of dissolved corporations.

Accordingly, we agree with the district court's rejection of Asarco's argument that the Trustees may be held liable by application of a trust fund theory as a matter of federal law.

B.      New York Probate Law

Having concluded that state law governs whether liability may be imposed against the beneficiaries of Rockefeller's estate, we turn next to Asarco's arguments based on New York law. The relevant New York statute provides:

19

> Subject to the other provisions of this article,
> distributees and testamentary beneficiaries are liable, in
> an action, to the extent of the value of any property
> received by them as such, for the debts and reasonable
> funeral expenses of a decedent, the expenses of
> administering his estate and all taxes for which the
> estate is liable, which have not previously been
> recovered from the personal representative or from any
> other source . . . .

N.Y. Est. Powers & Trusts Law § 12-1.1(a).[6] The relevant question is whether the "debts . . . of a decedent" may arise as a result of legislation enacted following the decedent's death, and which has been expressly made retroactive.

"CERCLA by its terms has unlimited retroactivity," Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1351 (Fed. Cir. 2001), and it is by now settled that Congress intended CERCLA to have such retroactive effect. See, e.g., United States v. Monsanto Co., 858 F.2d 160, 174 (4th Cir. 1988); United States v. Ne. Pharm. & Chem. Co., 810 F.2d 726, 732 (8th Cir. 1986). Such retroactive application does not violate the due process clause, and does not convert CERCLA into a bill of attainder or an ex post facto law. See Monsanto, 858 F.2d

---

[6] The law in effect at the time of Rockefeller's death was Decedent Estate Law § 170, which was materially similar to N.Y. Est. Powers & Trusts Law § 12-1.1(a). See Brooklyn Sav. Bank v. Joseph Wechsler Estate, 259 N.Y. 9, 12-13 (1932) (quoting that statute: "An action may be maintained, as prescribed in this article, against the . . . legatees of a testator to recover, to the extent of the assets paid or distributed to them, for a debt of the decedent . . . .").

at 174-75.

Although Asarco does not identify any case in which New York courts have interpreted "debts . . . of a decedent" to include debts created by post-demise legislation that has been expressly made retroactive, and is not otherwise constitutionally infirm, it does cite cases that might support such a conclusion by negative pregnant. Essentially, those cases hold that New York courts will generally presume that New York statutes do not impose liability retroactively on the estates of decedents, and will not consider as "debts . . . of a decedent" liabilities retrospectively imposed by legislation after the decedent's death where such retrospective imposition would be unconstitutional.[7] Asarco argues that we can infer that New York law would recognize as such debts liabilities retrospectively imposed where, as in the case of CERCLA, the legislature clearly

---

[7] See, e.g., In re Malavase, 133 A.D.2d 759, 760 (2d Dep't 1987) ("It has been repeatedly held that the rights of individuals who may have an interest in a decedent's estate are fixed as of the date of death. Thus, the Legislature is presumed not to have intended to deprive those individuals of their rights through the retroactive operation of a statute passed after the date of death."); In re Kania's Estate, 126 N.Y.S.2d 395, 400 (N.Y. Surr. Ct. Broome County 1953) ("It is well established that, even in an instance where it intended to do so, the Legislature is without power to enact a law which destroys or impairs pre-existing vested rights, titles and interests. A statute which assumes to do so is sometimes regarded as being in violation of the 'due process of law' provisions of the Federal and State Constitutions."); id. at 401 ("Cases upholding the protection of vested property rights against the operation of an 'ex post facto' statute are very numerous.").

did intend to impose such liability and the statute has been held constitutional.

We are hesitant to rely on inference to decide an important issue of New York law. We might, of course, certify the issue to the New York Court of Appeals for its definitive resolution. See Second Cir. Local R. 27.2(a); N.Y. Comp. Codes R. & Regs., tit. 22, § 500.27(a); see also N.Y. Const. art. 6, § 3(b)(9). We do not do so in this case, however, because the answer to the potential "certified question is [not] determinative of a claim before us." In re Thelen, 736 F.3d at 224 (internal quotation marks omitted). In light of the conclusions we reach below regarding the statute of limitations, even if New York would consider liabilities imposed by CERCLA long after Rockefeller's death to be "debts . . . of a decedent" chargeable to his estate or its beneficiaries, Asarco's claims are, in any event, time-barred.

We therefore assume *arguendo* that New York law would permit the imposition of liability against John Rockefeller's testamentary trusts under these circumstances, and proceed to consider the statute of limitations issues.

C.      Statute of Limitations: Contribution Claims

CERCLA contribution claims are subject to a three-year statute of limitations, which provides that "[n]o action for contribution for any response costs or damages may be commenced more than 3 years after . . . entry of a

22

judicially approved settlement with respect to such costs or damages." 42 U.S.C. § 9613(g)(3)(B). The event triggering the beginning of the limitations period – "entry of a judicially approved settlement" – is the point of contention here. The district court, relying on the plain language of that provision, concluded that the statute of limitations began to run for the Everett Smelter Site on April 18, 2008, and for the MCMA on June 5, 2009. Asarco contends that the district court "committed legal error by ignoring the bankruptcy context in which the Everett Site and MCMA Site Agreements were negotiated and approved," Appellant's Br. 32-33, and that the statute of limitations did not begin to run until the date its reorganization plan became effective. We disagree.

We review the interpretation of federal statutes de novo. W. R. Grace & Co. – Conn. v. Zotos Int'l, Inc., 559 F.3d 85, 88 (2d Cir. 2009). "[O]ur obligation is to look to the plain language of the statute to effectuate the intent of Congress." Id.

The plain language of § 9613(g)(3)(B) contradicts Asarco's contention that the statute of limitations did not begin to run until its Reorganization Plan was either approved by the bankruptcy court or became effective. See RSR Corp. v. Commercial Metals Co., 496 F.3d 552, 558 (6th Cir. 2007) ("[T]he statute of limitations for contribution actions runs from the 'entry' of the settlement, 42

23

U.S.C. § 9613(g)(3)(B), not from the date that each provision of that settlement takes effect."). Pursuant to its authority under Federal Rule of Bankruptcy Procedure 9019(a), the bankruptcy court approved settlements for the Sites, which, by the terms of each settlement, resolved Asarco's liability for the corresponding government entities for the response costs incurred at each site. Moreover, each settlement was effective once approved by the bankruptcy court and was not conditioned on the confirmation of a reorganization plan. We have no doubt that the bankruptcy court's approval of the settlement falls within § 9613(g)(3)(B).

Asarco contends that the bankurptcy court's approval of the settlement agreements only resolved the disputed proofs of claim and did not immediately trigger CERCLA's three-year statute of limitations for direct contribution claims because "[n]o moneys could be paid at that time," and because "it could not even be definitively stated how much would be paid at the time the Bankruptcy Court approved the two agreements." Appellant's Br. 33. Therefore, Asarco argues, the date that the reorganization plan became effective is the most logical triggering event for the statute of limitations because "[o]nly upon the [Reorganization] Plan's judicial confirmation and effective date was the

contribution amount finally determined and payable,"id., in this case, December 9, 2009.[8]

It is a sufficient answer to say that Congress chose to tie the limitation period to the "entry of a judicially approved settlement" and not to "approval of [a reorganization] [p]lan." We note as well, however, that under the terms of the statute a "judicially approved settlement" need only "resolve[]" a potentially responsible party's liability, and not fix the settlement amount. See 42 U.S.C. § 9613(f)(3)(B). Such a resolution occurs when a potentially responsible party is released from CERCLA liability, which the Everett Smelter and MCMA settlements accomplished with respect to Asarco. See Niagara Mohawk, 596 F.3d at 125-26; RSR Corp., 496 F.3d at 558. Moreover, given that the confirmation of a reorganization plan could plausibly take years, tying the statute of limitations to that date would do nothing to ensure the "principal purpose of limitations periods in this setting," namely "ensur[ing] that the responsible parties get to the bargaining- and clean-up-table sooner rather than later." RSR Corp., 496 F.3d at 559.

Because the bankruptcy court approved a settlement as to the Everett

---

[8] Asarco alternatively argues that the date of the bankruptcy court order confirming the Plan, November 13, 2009, could be the triggering event. We reject that argument too as having no basis in the statutory text.

Smelter Site on April 18, 2008, and as to the MCMA on June 5, 2009, we agree with the district court that the three-year statute of limitations for the Everett Smelter expired on April 18, 2011, more than a year before this action was commenced on May 10, 2012.

As to the MCMA, the three-year statute of limitations expired on June 5, 2012 – after this action was filed, but before Asarco filed its first amended complaint on July 17, 2012. It was only in that amended complaint that Asarco first asserted a claim relating to the MCMA. Thus, as Asarco concedes, that claim is time-barred unless it relates back to the filing of the initial complaint. See Fed. R. Civ. P. 15(c)(1)(B).

Upon de novo review, we find no error in the district court's determination that the MCMA claims do not relate back the original complaint. See Slayton v. Am. Exp. Co., 460 F.3d 215, 228 (2d Cir. 2006). For a newly-added claim to relate back under Rule 15(c)(1)(B), "the basic claim must have arisen out of the conduct set forth in the original pleading." Id. (internal quotation marks omitted). "[T]he central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." Id. (internal quotation marks omitted).

26

Here, Asarco's original complaint dealt exclusively with the alleged contamination at the Everett Smelter, and contained no facts whatever about the MCMA settlement, any actions taken or costs incurred to remediate the MCMA site, or even any reference to the environmental contamination there. Indeed, the original complaint explained that the suit involved a claim "for costs incurred by Asarco at a former lead smelter and arsenic extraction facility . . . and surrounding areas located in Everett, Washington." J.A. 19, ¶ 1. In contrast, the MCMA claims, as described in the Second Amended Complaint, arose as a result of "mining, ore concentrating, and transportation facilities located . . . in Snohomish County, Washington," approximately 40 miles away from Everett. J.A. 71, ¶ 1. While the Second Amended Complaint alleges that the enterprises involved in the Everett and MCMA operations were "interrelated," we cannot see how the original complaint would have given "adequate notice" that the MCMA claims, which were based on different conduct, in a different location, and attributable to different entities than the claims set forth in that pleading, would be at issue in the dispute. See Slayton, 460 F.3d at 228.

Accordingly, Asarco's direct contribution claims are time-barred.

IV.    Subrogation Claim

Finally, Asarco contends that it is entitled to assert a contribution claim as a

27

subrogee, based on the fact that it paid the sum approved in the settlement, which was made and approved while Asarco was a debtor-in-possession in a Chapter 11 bankruptcy proceeding, after it had emerged from bankruptcy. The argument is founded on the premise that as the reorganized debtor, Asarco is a separate legal entity from the former debtor-in-possession and paid the debtor's CERCLA liability. Therefore, Asarco asserts that its claims are timely under the alternative statute of limitations in 42 U.S.C. § 9613(g)(4), which provides that "[n]o action based on rights subrogated pursuant to this section by reason of payment of a claim may be commenced under this subchapter more than 3 years after the date of payment of such claim." If that provision applies, both the Everett Smelter and the MCMA claims would be timely, since the *payment* of the settlement amount occurred on December 9, 2009, which was less than three years before the filing of the later of Asarco's two amended complaints, which was filed in October 2012.

For the reasons set forth below, we reject Asarco's argument and conclude that the Asarco that filed for bankruptcy as debtor-in-possession and entered the settlement and the Asarco that emerged from bankruptcy and paid the settlement amounts are not separate legal entities for purposes of pursuing

28

post-confirmation subrogation claims. Having paid its own debt, Asarco is not entitled to assert a subrogation claim.

"To determine whether or not entities are the same the court must look to the substance of the [Reorganization] Plan." Cross Media Mktg. Corp. v. CAB Mktg., Inc., 367 B.R. 435, 451 (Bankr. S.D.N.Y. 2007). Here, the terms of the Plan establish that Asarco is the same legal entity as the debtor in the bankruptcy proceeding (the "Debtor") and is therefore not a subrogee. Provisions of the Reorganization Plan:

- define "Reorganized ASARCO," which is the plaintiff here, to be one and the same as the Debtor as of the effective date of the Plan. It defines "Reorganized ASARCO" as "ASARCO and/or any of its successors . . . on or after the Effective Date," Reorganization Plan, ¶ 298, and defines "ASARCO" as "ASARCO LLC" which is "a Delaware limited liability company and one of the Debtors herein," id., ¶¶ 21, 25.

- continue the Debtor's existence as Asarco. Id., art. 10.11 ("Reorganized ASARCO shall continue its existence after the Effective date.").

- vest the claims and causes of action of the Debtor and the bankruptcy estate in Asarco. Id., art. 10.12 ("Except as otherwise expressly provided in the [Plan], on the Effective Date, all of ASARCO's and its Estate's property and assets shall vest in Reorganized ASARCO . . . ."); id., art. 10.13 ("Any and all claims and causes of action that were owned by ASARCO or its Estate as of the Effective Date . . . shall vest in Reorganized ASARCO on the Effective Date . . . .").

29

- maintain the Debtor's identical equity owners as the owners of the Reorganized Asarco.  <u>Id</u>., art. 10.11 ("The equity interests in Reorganized ASARCO shall continue to be held by ASARCO USA Incorporated.").

Because the Asarco that emerged upon reorganization is not a different entity from the Asarco that entered bankruptcy as the Debtor, Asarco's payment of the settlement lacks the basic requirement of subrogation – the existence of a subrogee that is a distinct entity from the subrogor.  <u>See</u> <u>US Airways, Inc. v. McCutchen</u>, 133 S. Ct. 1537, 1546 (2013).  As the Supreme Court put it in that case, "[s]ubrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against a third party."  <u>Id</u>. at 1546 n.5 (internal quotation marks omitted).  Asarco is still wearing its own shoes; it agreed to pay and paid its own debts.  The district court thus properly dismissed Asarco's subrogation claims, and correctly concluded that the statute of limitations for subrogation claims has no bearing on this case.

## CONCLUSION

We have considered all of Asarco's contentions on this appeal and have found them to be without merit. For the foregoing reasons, the judgment of the district court is AFFIRMED.